896 F.Supp. 1373 (1995)
Kelly L. MCILWAIN, Plaintiff,
v.
KORBEAN INTERNATIONAL INVESTMENT CORPORATION, Isaac Milstein, and Robert Rosner, Defendants.
No. 94 Civ. 7000 (PKL).
United States District Court, S.D. New York.
August 18, 1995.
*1374 *1375 Catalano & Sparber, New York City (Steven H. Blatt, of counsel), for plaintiff.
Thomas S. Rosenthal, New York City (Thomas S. Rosenthal, of counsel), for defendant Milstein.

OPINION AND ORDER
LEISURE, District Judge:
This is an action for employment discrimination. Plaintiff is Kelly L. McIlwain ("McIlwain"). Defendants are McIlwain's former employer, Korbean International Investment Corporation ("Korbean"), and two Korbean employees, Robert Rosner and Isaac Milstein (collectively, "defendants"). McIlwain alleges that defendants sexually harassed her in violation of Title VII of the Civil Rights Act of 1964, see 42 U.S.C. § 2000e et seq., the New York Human Rights Law, see N.Y.Exec.Law § 296, and Title VIII of the Administrative Code of the City of New York. This Court has original jurisdiction over McIlwain's Title VII claim pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331 (Supp.1993), and supplemental jurisdiction over the state and city law claims pursuant to 28 U.S.C. § 1367(a).
Defendant Milstein has moved to dismiss the complaint as against him for failure to state a claim upon which relief may be granted, see Fed.R.Civ.P. 12(b)(6).[1] Dismissal under Rule 12(b)(6) is appropriate "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Dahlberg v. Becker, 748 F.2d 85, 88 (2d Cir.1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). For the reasons stated below, Milstein's motion is granted in part and denied in part.

BACKGROUND
In ruling on a motion to dismiss, a complaint is to be construed in the light most favorable to the plaintiff. See Kaluczky v. City of White Plains, 57 F.3d 202, 206 (2d Cir.1995). Thus, for purposes of ruling on defendant Milstein's motion, all factual allegations in the complaint will be taken as true and construed in the light most favorable to McIlwain. See Stewart v. Jackson & Nash, 976 F.2d 86, 87 (2d Cir.1992) (citing LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir.1991).
On or about December 28, 1992, McIlwain was hired by Korbean in its Planning and Development department to recruit traders and account executives for foreign currency. See Complaint ¶ 10. Rosner, who is Director of the Planning and Development department, *1376 was McIlwain's "immediate supervisor." Complaint ¶ 14.
On and about December 28, 1992, McIlwain's first day of work, "McIlwain was assigned to work with Milstein a Coordinator of Planning and Development of Korbean." Complaint ¶ 15. Immediately thereupon, "Milstein subjected McIlwain to continuous offensive sexual language and repeatedly touched McIlwain without her permission." Id. On the first day of work, Milstein asked McIlwain if he could touch her knee and attempted to hold her hand. McIlwain informed Milstein that he could not touch her knee, and pulled away her hand. See id.
McIlwain alleges that defendant Milstein would constantly touch her shoulder and ask if she would perform sexual acts on him. McIlwain also alleges that Milstein would frequently conduct conversations of a sexually explicit nature on the phone in McIlwain's presence. See Complaint ¶ 16. Each time Milstein impermissibly touched McIlwain, she moved away and told him to stop. See Complaint ¶ 17.
McIlwain alleges that Milstein's "violative conduct continued to escalate." Complaint ¶ 18. Milstein constantly asked McIlwain to have sex with him. See id. McIlwain never gave "any indication that Defendant Milstein's improper conduct was welcome." Complaint ¶ 20.
McIlwain further alleges that defendants Korbean and Rosner participated in and encouraged the impermissible conduct carried out by Milstein against McIlwain. See Complaint ¶ 22. McIlwain alleges that defendant Rosner did not take her complaints seriously, telling her "that Milstein was sexually deprived and ... probably just wanted to get McIlwain in bed." Id.
As McIlwain's supervisor, Rosner had the authority to alter McIlwain's work schedule and assignments. See Complaint ¶ 23. By January, 1993, McIlwain's duties and responsibilities had expanded and she was regularly working overtime on various tasks and projects given her by Rosner. See id. Although the Korbean offices closed at 5:00 p.m., McIlwain and Rosner usually worked until 8:00 p.m. by themselves. See id. McIlwain alleges that "[i]n this manner Rosner began a campaign of intentionally overworking McIlwain and capitalized upon his authority over Plaintiff to force her to endure continuous violative conduct." Complaint ¶ 23.
McIlwain alleges that "[a]s her immediate supervisor, Defendant Rosner began subjecting McIlwain to repeated offensive sexual language and violative sexual conduct." Complaint ¶ 24. On or about January 20, 1993, Rosner and McIlwain worked late together on a project and had a business-related dinner at a Houlihan's restaurant in Manhattan. See id. Due to the lateness of the hour, McIlwain and Rosner decided that it would be best to stay in the City for the night. See Complaint ¶ 25. McIlwain agreed to stay at a Holiday Inn for the night with the understanding that she and Rosner would be staying in separate rooms. See id. Rosner insisted on staying in one room, however, and, "[d]ue to the fact that Rosner was McIlwain's supervisor, McIlwain felt that she had to acquiesce to his suggestion." Complaint ¶ 26.
McIlwain alleges that Rosner asked McIlwain to take off her robe and come over to his bed. McIlwain further alleges that when she responded "no," Rosner proceeded to enter McIlwain's bed, open his robe, "kiss McIlwain on the lips and touch intimate parts of her body." Complaint ¶ 27.
On or about early February, 1993, McIlwain and Rosner worked late and again went out for a business dinner together. Once again, they stayed in a hotel for the night. McIlwain alleges, in substance, that Rosner raped her that evening. See Complaint ¶ 30.
McIlwain alleges that Rosner's position as McIlwain's supervisor aided him in "accomplishing the assaults":
Defendant Rosner acted within the scope of his authority as McIlwain's supervisor by luring and pressuring McIlwain to go to hotels after business dinners. Moreover, he was aided in accomplishing the assaults, and other mistreatment of McIlwain because of her sex by his position at Korbean *1377 as her supervisor and his agency relationship with Korbean.
Complaint ¶ 32.
On or about early January 27, 1993, Rosner, Milstein, and McIlwain went to a diner for a business dinner. During the dinner, Milstein and Rosner made "repeated unwelcome sexual comments to McIlwain." Complaint ¶ 29. In addition, during the first week of February 1993, both Milstein and Rosner looked down McIlwain's blouse, while McIlwain was performing her duties in the office. See id.
On or about February 16, 1993, Rosner, Milstein and McIlwain went to dinner together, once again. McIlwain alleges that during the dinner, Rosner and Milstein "continually sexually harassed McIlwain by asking her sexual questions such as her preference for sexual positions. They also asked McIlwain to describe her fantasies." Complaint ¶ 33.
McIlwain alleges that the discrimination and sexual harassment by defendants Milstein, Rosner, and Korbean had the purpose and effect of unreasonably interfering with McIlwain's work performance and creating an intimidating, hostile, and offensive work environment. See Complaint ¶ 38. McIlwain alleges that on or about February 17, 1993, she was forced to leave work at Korbean because she was unable to tolerate the continued harassment, threats, and assaults. See id.
McIlwain traveled to Philadelphia to meet her boyfriend, who convinced her to go to the hospital so that she could be examined. See Complaint ¶¶ 39-40. McIlwain was hospitalized for approximately two weeks and was diagnosed as being bipolar depressive as a result of stress incurred in the prior two and one-half months. See Complaint ¶ 40.
After being hospitalized for a few days, McIlwain called Rosner and inquired about her position at Korbean. See Complaint, ¶ 42. The impression she received from Rosner was that "she [might] be losing her job." Id. McIlwain called Rosner again several days before leaving the hospital and informed him that she wished to come to work to discuss her position at Korbean. See Complaint ¶ 43. When McIlwain asked to return to work on a part-time basis, Rosner responded, "I don't think so." Complaint ¶ 44.
McIlwain alleges that Korbean and Rosner expressly and impliedly made sex a condition for her receipt and retention of job benefits. McIlwain further alleges that "Rosner caused McIlwain to be fired, which act Korbean has condoned, because of the conclusion of the sexual relationship and McIlwain's illness." Complaint ¶ 45.
On September 14, 1994, McIlwain filed her complaint in this Court against Korbean, Rosner, and Milstein for sexual harassment in violation of Federal, New York State, and New York City laws. Before filing this complaint, on August 12, 1993, McIlwain filed charges of sexual harassment and discrimination against defendants Korbean, Rosner, and Milstein with the Equal Employment Opportunity Commission (the "EEOC"). See Plaintiff's Complaint, Exhibit 1.[2] McIlwain received a Notice of Right to Sue dated July 8, 1994, less than 90 days before she filed this action. See Plaintiff's Complaint, Exhibit 2.
Defendant Milstein now brings the instant motion to dismiss the complaint as against him for failure to state a claim upon which relief may be granted.

DISCUSSION

I. TITLE VII
Defendant Milstein argues that McIlwain's Title VII claim should be dismissed as against him because he is not an "employer" within the meaning of the statute and is, therefore, not a proper party-defendant. See Memorandum of Law in Support of Defendant Isaac Milstein's Motion to Dismiss the Complaint ("Defendant Mem.") at 2.
McIlwain responds that her detailed allegations of Milstein's intentional personal misconduct support individual liability in this case. See Plaintiff's Memorandum of Law in *1378 Opposition ("Plaintiff Mem."), at 10 (citing Archer v. Globe Motorists Supply Co., 833 F.Supp. 211 (S.D.N.Y.1993); Bramesco v. Drug Computer Consultants, 834 F.Supp. 120 (S.D.N.Y.1993)). However, McIlwain nowhere alleges that Milstein was McIlwain's "employer." Nor does she argue that Milstein was an "agent" of the employer. McIlwain's response thus raises the issue of whether one who is neither an employer nor an "agent" of an employer may be held liable under Title VII for discriminatory conduct.
Title VII provides, in pertinent part:
It shall be an unlawful employment practice for an employer  to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.
42 U.S.C. § 2000e-2(a) (emphasis added). Title VII defines the term "employer" to mean, in pertinent part, "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b) (emphasis added).
Plaintiff invokes Archer v. Globe Motorists Supply Co., 833 F.Supp. 211 (S.D.N.Y.1993) and Bramesco v. Drug Computer Consultants, 834 F.Supp. 120 (S.D.N.Y.1993) as standing for the proposition that "sufficiently detailed allegations of individualized personal misconduct as opposed to vicarious responsibility might in a proper case support individual liability." Plaintiff Mem. at 10.
In Archer, the Court cited Miller v. Maxwell's Int'l, Inc., 991 F.2d 583 (9th Cir.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994), as holding that "Title VII ... [is] directed toward employers, not individual non-employer natural persons, at least absent intentional misconduct." Archer, 833 F.Supp. at 213 (emphasis added). In Bramesco, the Court again cited Miller for the proposition that individual liability can be imposed where there is "separate intentional misconduct." Bramesco, 834 F.Supp. at 123.
However, in Miller, the Court of Appeals for the Ninth Circuit squarely held that "individual defendants cannot be held liable for damages under Title VII." Miller, 991 F.2d at 587 (reaffirming Padway v. Palches, 665 F.2d 965, 968 (9th Cir.1982)). Nowhere in the opinion did the court provide an exception for intentional misconduct.
This Court declines to follow the language in Archer and Bramesco suggesting that individual employees might be individually liable under Title VII if they have engaged in intentional misconduct. Title VII clearly imposes liability only upon "employers" as defined in the statute, and not upon individual employees who have engaged in intentional misconduct but do not otherwise qualify as employers. No Circuit Court of Appeals that has addressed the issue has adopted plaintiff's theory and this Court now also declines to do so. See discussion, infra, pp. 1379-1380. Having failed to allege that Milstein was McIlwain's "employer" (or that he was even an "agent" of the employer), McIlwain has thus failed to state an actionable Title VII claim as against defendant Milstein.
Next, to determine whether McIlwain's Title VII claim against Milstein should be dismissed with or without prejudice, the Court addresses the issue of whether McIlwain could bring an actionable Title VII claim against Milstein in his individual capacity were she to allege that Milstein was an "agent" of Korbean. In Meritor Sav. Bank v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court explained that "Congress' decision to define `employer' to include any `agent' of an employer, 42 U.S.C. § 2000e(b), surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible." Meritor, 477 U.S. at 72, 106 S.Ct. at 2408. However, the Court did not there address the issue of whether Title VII liability may be imposed on an employer's agents in their individual capacities.
The Court of Appeals for the Second Circuit *1379 has not yet ruled on this issue.[3] Those Courts of Appeals that have addressed the issue are split over whether the inclusion of the "and any agent" language was intended to provide for individual liability against agents of the employer. In Grant v. Lone Star Co., 21 F.3d 649 (5th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994), for example, the Court of Appeals for the Fifth Circuit held that "title VII does not provide for liability against employees who do not otherwise qualify as employers." Grant, 21 F.3d at 650. The court pointed out the absence of specific language in Title VII imposing individual liability:
[C]ongress has proscribed conduct by `persons' in other statutory schemes. See 42 U.S.C. §§ 1981, 1983, 1985, 1986. The absence of specific language making a non-employer individual liable for these damages, when Congress has included such language in other contexts, indicates that Congress did not intend to impose individual liability for backpay damages under title VII, unless the individual meets the statutory definition of `employer.'
Grant, 21 F.3d at 653; see also Smith v. Lomax, 45 F.3d 402, 403 n. 4 (11th Cir.1995) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.") (quoting Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir.1991)); Sauers v. Salt Lake County, 1 F.3d 1122, 1125 (10th Cir.1993) ("Under Title VII ... individual capacity suits are inappropriate."); Falbaum v. Pomerantz, 891 F.Supp. 986, 991 (S.D.N.Y.1995) ("[T]he background principles of respondeat superior and the specific definition of `employer' support the conclusion that Congress intended to hold employers, but not individual employees, liable for acts of discrimination in employment [under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA")]"); cf. EEOC v. AIC Sec. Investigations, 55 F.3d 1276 (7th Cir.1995) (individual capacity suits are inappropriate under the Americans with Disabilities Act, 42 U.S.C. § 1211, et seq.).
Similarly, in Miller v. Maxwell's Int'l, Inc., supra, the plaintiff alleged sex discrimination in violation of Title VII, suing several employees as defendants. The Ninth Circuit dismissed the plaintiff's claim, holding that Title VII's liability scheme "limit[s] civil liability to the employer." 991 F.2d at 587.
The statutory scheme itself indicates that Congress did not intend to impose individual liability on employees. Title VII limits liability to employers with fifteen or more employees, 42 U.S.C. § 2000e(b) ... in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims. If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.
Id.; see also Crawford v. W. Jersey Health Systems, 847 F.Supp. 1232, 1237 (D.N.J.1994) ("Holding individual employees, but not small employers, liable under these statutes is patently inconsistent."); but see Lamirande v. Resolution Trust Corp., 834 F.Supp. 526 (D.N.H.1993) (arguing that "more likely" reason for "the size restriction ... was ... to protect small family run businesses from discriminatory hiring claims based on their preference for hiring friends and relatives.") (citation omitted). In Miller, the Ninth Circuit further reasoned that, although supervisory personnel might be agents of the employer for purposes of determining the employer's liability, "`[t]he obvious purpose of [the "and any agent"] provision was to incorporate respondeat superior liability into the statute,'" and not to authorize the imposition of individual liability. See id.; see also Johnson v. Northern Ind. Pub. Serv. Co., 844 F.Supp. 466, 469 (N.D.Ind.1994) ("[T]he more reasoned reading of the statute is that the `and any agent of such a person' language was meant to incorporate respondeat superior into the statute."); compare Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 & n. 1 (4th Cir.) (construing § 630(b) of the ADEA as "an unremarkable expression of *1380 respondeat superior" and distinguishing Paroline v. Unisys, infra), cert. denied, ___ U.S. ___, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994) with Paroline v. Unisys Corp., 879 F.2d 100, 104 (4th Cir.1989) ("An individual qualifies as an `employer' under Title VII if he or she serves in a supervisory position and exercises significant authority over the plaintiff's hiring, firing or conditions of employment.") (citations omitted).
The Sixth Circuit, by contrast, has stated that one who qualifies as an "agent" of an "employer" may be subject to individual liability under Title VII. See Jones v. Continental Corp., 789 F.2d 1225, 1231 (6th Cir. 1986) ("the law is clear that individuals may be held liable ... as `agents' of an employer under Title VII") (dictum) (citations omitted). The Sixth Circuit has defined the term "agent" to mean one who "[exercises] significant control over employment conditions." Kauffman v. Allied Signal, Inc., 970 F.2d 178, 186 (1992); see also Bridges v. Eastman Kodak Co., 800 F.Supp. 1172, 1180 (S.D.N.Y. 1992) (The term "agent" includes "supervisors and other individuals who participate in the discriminatory decision-making process."); Bradley v. Rockland County Community Mental Health Ctr., 25 F.E.P.C. 225, 24 E.P.D. ¶ 31,321, 79 Civ. 6772, 1980 WL 250 (S.D.N.Y.1980); Vakharia v. Swedish Covenant Hospital, 824 F.Supp. 769, 785 (N.D.Ill.1993) ("Decisionmaking employees ... may be held liable in their individual capacities under Title VII.") (citations omitted).
Under the rule followed in the Fifth, Ninth, Tenth, and Eleventh Circuits, Milstein would be absolutely protected from individual liability under Title VII, whereas in the Sixth Circuit, he could be individually liable if he exercised sufficient supervisory authority over McIlwain. The Court finds that the reasoning followed in the majority of circuits is more persuasive. The absence of specific language in Title VII imposing individual liability contrasts with the inclusion of specific language imposing such liability in other statutory schemes. See 42 U.S.C. §§ 1981, 1983, 1985, and 1986. Moreover, Title VII's statutory scheme itself indicates that Congress did not want to burden small business entities with liability, and imposing liability upon individual employees would be inconsistent with this legislative choice. The better reading of Title VII is that the "and any agent" provision was intended to incorporate respondeat superior into the statute. The Court therefore holds that McIlwain could not state an actionable Title VII claim against Milstein in his individual capacity even if she were to allege that Milstein was an "agent" of Korbean. Accordingly, the Court grants, with prejudice, defendant Milstein's motion to dismiss McIlwain's Title VII claim as against him.
Finally, if this Court were to interpret Title VII as providing for individual liability suits in accordance with the Sixth Circuit's approach, McIlwain would be unable to impose liability upon defendant Milstein under the circumstances in this case. Under the rule followed by those courts that allow individual liability, Milstein is a proper party-defendant only if he participated in the decision-making process that forms the basis of the alleged discrimination. See Bridges, 800 F.Supp. at 1179-80; Bradley, 1980 WL 250, at *4. McIlwain has not alleged facts sufficient to satisfy this test.[4]
McIlwain's conclusory statement that she suffered discrimination on the basis of sex "at the hands of Defendants Rosner and Milstein, McIlwain's supervisors," Complaint ¶ 1, is insufficient to withstand defendant Milstein's motion to dismiss. In Bradley, plaintiff alleged that the defendant was her supervisor and that he "participated in the decisions that led to plaintiff's termination." Bradley, 1980 WL 250, at *4 (quoting Affidavit of Gilbert Holmes, plaintiff's attorney, at 24). The court found that these allegations were sufficient to withstand defendant's motion to dismiss. In the instant case, however, McIlwain nowhere alleges that defendant *1381 Milstein participated in the discriminatory decision-making process that forms the basis of the alleged sexual harassment. In fact, as previously indicated, McIlwain nowhere alleges that Milstein was an "agent" of Korbean. Significantly, McIlwain alleges that Rosner was "aided in accomplishing the assaults, and other mistreatment of McIlwain because of her sex by his position at Korbean as her supervisor and his agency relationship with Korbean." Complaint ¶ 32 (emphasis added). Yet McIlwain nowhere alleges that Milstein was similarly aided in accomplishing his alleged assaults by an agency relationship with Korbean.
Moreover, as defendant Milstein points out, except for McIlwain's conclusory statement in Complaint ¶ 1 ("This is an action for employment discrimination ... at the hands of Defendants Rosner and Milstein, McIlwain's supervisors"), every other allegation regarding supervisory status demonstrates that McIlwain was supervised not by Milstein, but by defendant Rosner. See Defendant Mem., at 3. McIlwain repeatedly refers to Rosner as her "supervisor," Complaint ¶¶ 19, 21, 23, 26, 27, 32; Plaintiff Mem. at 5 ("Rosner was McIlwain's supervisor...."); id. at 15 (referring to "McIlwain's ... supervisor, Rosner"); see also Complaint ¶¶ 14, 24, 30, 32 (referring to Rosner as McIlwain's "immediate supervisor"); Plaintiff Mem. at 4 (referring to "her immediate supervisor, Rosner"). Except for McIlwain's conclusory statement in Complaint ¶ 1, she never refers to Milstein as her "supervisor."
More significantly, McIlwain does not allege facts showing that Milstein had any supervisory authority over her. An individual will be found to serve in a supervisory position if he "exercises significant control over the employee's firing, hiring, or conditions of employment." Paroline, 879 F.2d at 104. The power to determine work assignments often represents a key element of supervisory authority. See id. However, McIlwain alleges that she was hired by Rosner, who acted on Korbean's behalf, see Complaint Exh. 1, at 1; that "Rosner, as McIlwain's supervisor, had the authority to alter McIlwain's work schedule and assignments," Complaint ¶ 23; and that Rosner caused plaintiff to be fired, see Complaint ¶¶ 42-45. By contrast, McIlwain alleges that she was assigned to work "with Milstein." Complaint ¶ 15; Plaintiff Mem. at 2, 10. McIlwain's allegations show that Milstein was no more than a co-worker.
Milstein has shown that, based on McIlwain's current complaint, even if this Court were to interpret Title VII as providing for individual liability suits in accordance with the Sixth Circuit's approach, McIlwain would be unable to prove any set of facts supporting her claim which would entitle her to relief.

II. NEW YORK STATE HUMAN RIGHTS LAW
Milstein next argues that McIlwain's claim against him under the New York State Human Rights Law (the "HRL") should be dismissed because the HRL imposes individual liability for employment discrimination only on persons who, unlike Milstein, have an ownership interest in the business that employed plaintiff or have power to do more than carry out personnel decisions made by others. See Reply Memorandum of Law in Support of Defendant Isaac Milstein's Motion to Dismiss the Complaint ("Reply Mem."), at 12-14 (citing Patrowich v. Chemical Bank, 63 N.Y.2d 541, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984) (per curiam)). Milstein also argues that McIlwain's complaint fails adequately to allege that Milstein "aided, ... abetted, ... incited, ... compelled, or ... coerced either defendant Korbean or defendant Rosner to practice unlawful employment discrimination" in violation of HRL § 296(6).[5] Reply Mem. at 15.[6] Finally, Milstein maintains *1382 that "[i]t is well-settled that there is no valid cause of action for conspiratorial acts, such as aiding, abetting, and inciting, when those acts are committed among two employees or the corporate entity and an employee of that same corporation." Reply Mem. at 17. McIlwain responds that she has adequately alleged that Milstein aided and abetted defendants Rosner and Korbean in discriminating against her, in violation of New York Executive Law § 296(6). See Plaintiff Mem. at 18.
In Patrowich v. Chemical Bank, 63 N.Y.2d 541, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984), the Court of Appeals of New York broadly stated that "[a] corporate employee, though he has a title as an officer and is the manager or supervisor of a corporate division, is not individually subject to suit with respect to discrimination ... under New York's Human Rights Law (Executive Law, art. 15) ... if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." Id., 63 N.Y.2d at 542, 483 N.Y.S.2d at 660, 473 N.E.2d at 12. However, the remainder of the Court's discussion of the HRL in Patrowich suggests that the Court's limitation of liability to owners and decisionmakers applied only to sections of the New York Executive Law that imposed liability on "employers," as that term is defined in New York Executive Law § 292(5). See id., 63 N.Y.2d at 543, 483 N.Y.S.2d at 660-61, 473 N.E.2d at 12-13; see also Fruchter v. Sossei, No. 94-8586, 1995 WL 274457, at *5 (S.D.N.Y. May 10, 1995) (Sand, J.) ("The New York Court of Appeals has held that an individual manager or supervisor is an "employer," subject to suit under the Human Rights Law, if he [is an owner or decisionmaker].") (citing Patrowich) (emphasis added). In particular, the Patrowich Court did not raise or otherwise consider the issue of whether individuals who are employees of the business that employs the plaintiff, but who are not owners or decisionmakers in that business, could be subject to liability, pursuant to HRL § 296(6), which makes its "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this article, or to attempt to do so," HRL § 296(6) (emphasis added). The HRL defines the term "person" to include "one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers." N.Y.Exec.Law § 292(1) (emphasis added).
Other district courts in this Circuit have interpreted New York Executive Law § 296(6) as "impos[ing] liability on employees who actually participate in unlawful discrimination." Linville v. O & K Trojan, Inc., No. 91-284S, 1994 WL 117363, at *20 (W.D.N.Y. Mar. 31, 1994); see also Fruchter, 1995 WL 274457, at *5 (citations omitted); Wanamaker v. Columbian Rope Co., 740 F.Supp. 127, 135-36 (N.D.N.Y.1990). In Wanamaker, for example, the court held that, even if those defendants who were directors of the defendant company "were not corporate agents," in the sense that they were not owners or decisionmakers under Patrowich, they nevertheless were not entitled to dismissal of plaintiff's claims against them under § 296(6), where "plaintiff's allegations support[ed] the conclusion that defendants aided or abetted the acts which plaintiff claim[ed] violated the [HRL]." Wanamaker, 740 F.Supp. at 136. This Court concludes, based on the foregoing authorities, that Patrowich does not limit liability under HRL § 296(6) to those "individuals" who are owners or decisionmakers in the business that employs the plaintiff.[7] Rather, an individual who is *1383 an employee of the business that employs the plaintiff, like any other "individual," can aid, abet, incite, coerce or compel, a primary violation of the HRL committed by another employee or the business itself.[8]
The Court next finds without merit Milstein's argument that McIlwain has not alleged facts sufficient to state a cause of action against him under New York Executive Law § 296(6). Although McIlwain does not use verbs such as "aid," "abet," "compel," or "incite" in the complaint, McIlwain has alleged that Milstein actively participated with Rosner in discriminatory conduct against McIlwain. See Complaint ¶ 29 ("During [a business] dinner [on January 27, 1993] Milstein and Rosner made repeated unwelcome sexual comments to McIlwain. In addition, during the first week of February 1993 both Milstein and Rosner looked down McIlwain's blouse, while McIlwain was performing her duties...."); see also ¶¶ 21, 23, 24, 33. Under the circumstances, the Court cannot say "beyond doubt that [McIlwain] can prove no set of facts in support of [her] claim which would entitle [her] to relief." Conley, 355 U.S. at 45-46, 78 S.Ct. at 102. Milstein's motion to dismiss McIlwain's New York Executive Law claim as against him is therefore denied.

III. Administrative Code of the City of New York
Defendant Milstein further argues that McIlwain's claim under Title VIII of the Administrative Code of the City of New York (the "Code") should be dismissed as against him because McIlwain did not serve a copy of the complaint upon the City Commission on Human Rights (the "City Commission") and the Corporation Counsel prior to commencing her civil action, as provided for by § 8-502(c) of the Code. See Defendant Mem. at 15. In Milstein's view, McIlwain has thus failed to comply with all "conditions precedent" to maintenance of her claim, as allegedly required by Rule 9(c) of the Federal Rules of Civil Procedure, and has therefore failed to set forth a viable cause of action for relief in this Court under the Code. See id. at 16.[9]
*1384 McIlwain responds that she has since served the complaint upon the City Commission and Corporation Counsel, and has thus met the requirement of § 8-502(c). See Exhibit C to the Blatt Affidavit, dated March 1, 1995. Milstein maintains, however, that McIlwain still has not satisfied the requirements of § 8-502(c), because she did not serve the complaint upon the City Commission and Corporation Counsel prior to commencing the action. See Reply Mem. at 22.
The Court agrees with McIlwain that the requirement of giving the City Commission and Corporation Counsel notice of actions under the Code has now been met. The only policy behind § 8-502(c) appears to be that of providing notice, as the Code does not mandate that the City Commission investigate or attempt to mediate a dispute after being served with a complaint to be filed in a civil action and before permitting the complainant to proceed on that complaint in civil court.[10] By serving her complaint in this action on the City Commission and Corporation Counsel, McIlwain satisfied the requirement of providing those offices with notice that she would be bringing a cause of action in civil court for violation of the Code.
Moreover, defendant Milstein has not demonstrated that he has been prejudiced in any way by McIlwain's failure to serve the complaint on the City Commission and Corporation Counsel prior to commencing the suit. McIlwain falls within the Code's three-year statute of limitations, see Administrative Code of the City of New York § 8-502(d), so that she would be permitted to refile her claim any time before February 1996. To dismiss McIlwain's City law claim and have her refile it the following day would be to exalt form over substance.[11] Accordingly, defendant's motion to dismiss McIlwain's City law claim as against him is denied.

CONCLUSION
For the reasons stated above, defendant Milstein's motion is granted in part and denied *1385 in part. Specifically, this Court grants Milstein's motion to the extent that he seeks to dismiss McIlwain's Title VII claim as against him, but denies Milstein's motion to the extent that he seeks to dismiss McIlwain's State and City law claims as against him.
SO ORDERED.
NOTES
[1] Milstein's motion initially sought dismissal of McIlwain's cause of action for intentional infliction of emotional distress, in addition to dismissal of the causes of action discussed below. McIlwain, however, has since withdrawn her cause of action for intentional infliction of emotional distress. The Court therefore does not address it.
[2] Also on August 12, 1993, McIlwain filed charges with the New York State Division of Human Rights. See Plaintiff's Complaint, Exhibit 1. These charges were dismissed for administrative convenience on July 15, 1994. See Plaintiff's Complaint, Exhibit 3.
[3] In Zaken v. Boerer, 964 F.2d 1319, 1322-24 (2d Cir.1992), the Second Circuit discussed the admissibility of evidence in an individual liability suit under Title VII, but was not presented with the question of whether Title VII imposes individual liability.
[4] The Court recognizes that the "discriminatory decision-making process" test is most applicable in cases of quid pro quo sexual harassment, where "agents" of the employer participate in decisions such as hiring and firing. Although the case against Milstein involves hostile work environment sexual harassment, neither party has objected to using this definition of the term "agent of the employer"; the Court thus applies it in this case.
[5] HRL § 296(6) provides:

6. It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.
New York Executive Law defines the term "person" to include "one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers." N.Y.Exec.Law § 292(1).
[6] In his moving papers, defendant Milstein also argued that he was not a proper party-defendant because he was not an "employer" within the meaning of New York Human Rights Law § 296(1)(a). McIlwain responded that she had not alleged that Milstein was an "employer" within the meaning of New York Executive Law § 296(1)(a). Rather, she argued that Milstein had violated § 296(6), which reaches persons in addition to "employers." See Plaintiff Mem. at 17. In light of McIlwain's response, the Court construes the complaint as seeking to allege a violation only of § 296(6).
[7] In this Court's view, Patrowich holds only that an individual employee may not be held liable, as an "employer," unless the individual is an owner or decisionmaker in the business that employs plaintiff. Monsanto v. Electronic Data Systems Corp., 141 A.D.2d 514, 529 N.Y.S.2d 512 (2d Dept.1988), is not to the contrary. There, the court dismissed a claim that a corporate employee had conspired with the business that employed plaintiff to terminate plaintiff's employment. As an alternative ground for its decision, the court reasoned that Patrowich required dismissal, because the employee had not been shown to be an owner or decisionmaker. However, the court was not there presented with a claim that the employee had violated HRL § 296(6), which, as discussed above, imposes liability on "any person," including "one or more individuals." See also Samper v. University of Rochester, 139 Misc.2d 580, 528 N.Y.S.2d 958, 961 (N.Y.Sup.Ct.Monroe Co.1987), aff'd as modified, 144 A.D.2d 940, 535 N.Y.S.2d 281 (4th Dept.1988), appeal dismissed, 74 N.Y.2d 642, 541 N.Y.S.2d 983, 539 N.E.2d 1111 (1989).
[8] Milstein cited no authorities on point in support of his argument to the contrary. In particular, Milstein's reliance on Girard v. 94th Street and Fifth Avenue Corp., 530 F.2d 66, 71 (2d Cir.), cert. denied, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976), Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir.), cert. denied, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978); Platsky v. Kilpatrick, 806 F.Supp. 358, 366 (E.D.N.Y. 1992), aff'd w/out opin., 7 F.3d 220 (2d Cir.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1406, 128 L.Ed.2d 78 (1994), and Kops v. New York Telephone Co., 456 F.Supp. 1090, 1094-95 (S.D.N.Y. 1978), aff'd w/out opin., 603 F.2d 213 (2d Cir. 1979) is misplaced. Those cases dealt with the scope of conspiracy liability under 42 U.S.C. §§ 1985(2) and 1985(3), not with the scope of liability under New York Executive Law § 296(6). Those cases demonstrate only that "a conspiracy among two or more employees of a corporation acting in the normal course of their employment does not constitute a conspiracy `between two or more persons' for the purposes of [42 U.S.C. §§ 1985(2) and 1985(3)]." Platsky, 806 F.Supp. at 366 (emphasis added) (citation omitted).
[9] In his moving papers, Milstein also argued that he could not be held liable under the Code because he was not an "employer" within the meaning of the Code. McIlwain responded that she never alleged that Milstein was her employer within the meaning of the Code. Rather, McIlwain contends that Milstein violated Code § 8-107(1)(a), which makes it an unlawful practice for an "employee," as well as an "employer," to engage in discriminatory conduct:

It shall be an unlawful discriminatory practice
(a) For an employer or an employee or agent thereof, because of the actual or perceived ... gender ... of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.
Administrative Code of the City of New York § 8-107(1)(a) (emphasis added). Because the plain language of the Code provides for liability against "employees," Milstein's argument that McIlwain's claim under the Code should be dismissed because Milstein is not an employer is meritless.
McIlwain also alleges that Milstein violated Code § 8-107(6), which makes it an unlawful discriminatory practice for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so." Id. § 8-107(6). Milstein raises the same arguments against this allegation as he raises against McIlwain's claim under New York Executive Law § 296(6). See Reply Mem. at 21 n. 8. For the reasons stated in Section II, supra, the Court finds Milstein's arguments unpersuasive.
[10] The Code also provides that any person aggrieved by unlawful discrimination "may ... make, sign and file with the [City] [C]ommission a verified complaint in writing," Code § 8-109(a) (emphases added), which verified complaint the City Commission is required to investigate, Code § 8-109(g). However, as the discretionary language of Code § 8-109(a) suggests, the aggrieved party is not required to proceed by filing a verified complaint with the City Commission. Rather, any person claiming to be aggrieved by unlawful discrimination also "shall have a cause of action in any court of competent jurisdiction ... unless such person has filed a complaint with the ... [City] [C]ommission ... or with the state division of human rights." Code § 8-502 a. And, "the [City] [C]ommission shall not have jurisdiction to entertain a [verified] complaint [filed with it] if ... the complainant has previously initiated a civil action in a court of competent jurisdiction ... unless such civil action has been dismissed without prejudice or withdrawn without prejudice." Code § 8-109(f)(i).
[11] As stated above, Milstein also relies on Rule 9(c) of the Federal Rules of Civil Procedure. Rule 9 provides guidelines for the plaintiff who is "pleading special matters." Rule 9(c) provides:

(c) Conditions Precedent. In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity.
Fed.R.Civ.P. 9(c). Milstein incorrectly seeks to apply this provision in the instant case. Conditions precedent arise in the context of contract and property law. Black's Law Dictionary defines the term "condition precedent" as follows:
A condition precedent is one which must happen or be performed before the estate to which it is annexed can vest or be enlarged; or it is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed.... A `condition precedent' is one that is to be performed before the agreement becomes effective, and which calls for the happening of some event or the performance of some act after the terms of the contract have been arrested on, before the contract shall be binding on the parties....
Black's Law Dictionary 266 (5th ed. 1979). Rule 9(c) is not applicable in the instant case.