OPINION OF THE COURT
Richard C. Wesley, J.
Plaintiff Dr. Samper commenced the instant action on or about January 9, 1987 claiming sex discrimination, defamation, intentional infliction of emotional distress, prima facie tort, breach of contract and a violation of due process rights arising out of her residency training at the University of Rochester’s Department of Anesthesiology. Defendants have moved for summary judgment on all causes of action.
Discusáed herein are the causes of action for sex discrimination under section 296 of the Human Rights Law (Executive Law art 15) and the alleged violations of NY Constitution, article VI, § 7 and section 140-b of the Judiciary Law.[1]
Dr. Samper claims that while a resident in anesthesiology at the University of Rochester she performed at least as well as all other students in the program and that she received unsatisfactory reviews on academic evaluations only as a result of sex discrimination. The complaint also raises claims that an "evaluation” meeting held by the defendants violated her rights to procedural due process, inasmuch as she had inadequate notice of the meeting and was denied her right to have an attorney present.
The plaintiff’s first cause of action is predicated upon violations of section 296 of New York’s Human Rights Law. This section prohibits an employer from discriminating against an employee because of sex or marital status. The plaintiff also alleges a violation of section 296 (7), which prohibits an employer from retaliating against an employee who opposes or reports discriminatory practices of an employer. The Human Rights Law does not statutorily define an employer.
The defendants have argued that section 6527 of the Educa *582 tion Law and sections 2805-j and 2805-m (3) of the Public Health Law act to immunize the defendants. The defense characterizes the plaintiffs’ complaint as one based on her unsatisfactory review by the chairman of the Department of Anesthesiology at Strong Memorial Hospital. The referenced sections of the Public Health Law and Education Law do grant immunity from suit to physicians or review committees for evaluations done without malicious intent.
The Public Health Law and Education Law immunize a physician’s "evaluation” of another physician; they do not authorize discriminatory treatment that leads to that result. For example, comments made to Dr. Samper about the weakness of the female sex are not a permissible evaluation technique in the context of the plaintiff’s anesthesiology training, absent proof that this comment, if true, bore a significant relationship to an anesthesiologist’s work. Dr. Samper alleges discrimination by the defendants (1) at the time of the January 25th meeting, (2) in the procedures used by the doctors to arrive at her unsatisfactory evaluation and (3) through additional comments made to her or Dr. Rosien. Dr. Samper alleges that the treatment she received was different from that of other residents, that her work was satisfactory and that she was treated differently because of her sex, marital status and because she had complained of the defendant’s acts.
The plaintiffs have framed their complaint in terms of the conduct that led to and included the unfavorable evaluations. The relevant sections of the Education Law and Public Health Law are not blanket authorizations to discriminate against other physicians. The sections were enacted to encourage frank discussion of a physician’s performance and/or credentials. (See, Palmer v City of Rome, 120 Misc 2d 558 [Sup Ct, Oneida County 1983].) They may not be employed to excuse sexual discrimination in the workplace. The plaintiffs’ complaint as to the first cause of action for summary judgment purposes is not subject to this defense.
The defendants have also asked this court to dismiss the first cause of action because the defendants are not employers under section 296 of the Executive Law. The defendants assert that the plaintiffs’ claim relates to discrimination, if any, in an educational context — an area not covered by the statute. (Cf, Executive Law § 296 [1-a] [b], [c].)
The definition of an "employer” as utilized in section 296 of *583 the Executive Law was examined by the Fourth Department in State Div. of Human Rights v Board of Coop. Educ. Servs. (98 AD2d 958 [4th Dept 1983]). In Board of Coop. Educ. Servs., the defendant was found not to be an employer. The court reasoned that the Board of Cooperative Educational Services (BOCES) was an education institution. The court noted that the petitioner’s "relationship to BOCES * * * is educational in nature and lacks the mutually beneficial economic substance which is the touchstone of an employer/employee relationship.” (Supra, at 958.)
In State Div. of Human Rights v GTE Corp. (109 AD2d 1082 [4th Dept 1985]), the court outlined the necessary elements to determine the existence of an employer-employee relationship within the meaning of the Human Rights Law. Those factors are: (1) the selection and engagement of the individual; (2) the payment of salary or wages; (3) the power to dismiss the individual, and (4) the power to control the individual’s work. In Matter of Villa Maria Inst, of Music v Ross (54 NY2d 691 [1981]) the Court of Appeals noted that the most important factor in determining the employer/employee relationship is the power to control the work of the individual.[2]
The defendants did "employ” the plaintiffs. Dr. Samper was selected based on her previous qualifications, paid a wage and had her schedule of hours controlled by those who headed the Department of Anesthesiology. Her hours, as well as the length of her residency, were directly controlled by the defendants. The defendant, Dr. Gabel, threatened to suspend her if she did not comply with his mandate for a specific meeting. As such, defendant Gabel apparently had the power to dismiss the plaintiff.
However, there remains a difficult and troubling twist to this case. Although the defendants may be employers for purposes of coverage under the statute, there remains a serious question as to whether the plaintiffs have identified any activity by the defendants that can be characterized as discrimination "in compensation or in terms, conditions or privileges of employment.” (Executive Law § 296 [1] [a].)
The plaintiffs’ complaint centers around alleged discrimina *584 tory conduct in the evaluation of Dr. Samper’s performance in the residency program. In addition, Dr. Samper alleges that Dr. Colgan made discriminatory remarks about her.
The evaluation process in question had no correlation to salary or professional advancement at the hospital. The unsatisfactory rating Dr. Samper received did require her to work (and study) an additional six-month period at Strong, however, that was an educational, not an employment requirement.
Federal and State courts have expressed a reluctance to intervene in faculty appointment and tenure decisions by colleges and universities. (See, Faro v New York Univ., 502 F2d 1229 [2d Cir 1974]; Powell v Syracuse Univ., 580 F2d 1150 [2d Cir 1978]; Matter of Pace Coll, v Commission on Human Rights, 38 NY2d 28 [1975].) In light of that policy, it would be easy for this court to dismiss the plaintiffs’ claim for discrimination.
However, the residency program was both a job and an educational prerequisite to the career goals of the plaintiffs. It is difficult, if not impossible at this point of the litigation, to separate some of the factual allegations into job/education categories. Comments reflecting a discriminatory attitude, coupled with changes in plaintiff Samper’s work schedule, create a possible factual basis for a conclusion of discrimination on the job. Further discovery will draw a brighter light to bear on the factual contentions of the parties, which may help to resolve this difficult issue. At this juncture, the plaintiffs have made out a case for possible employment discrimination. This conclusion may be different following discovery.
What has not been addressed by the plaintiffs is the absence of any facts in the complaint or related briefs or affidavits directed at any defendants other than Strong Memorial Hospital, the University of Rochester Medical Center and Drs. Gabel and Colgan. As the court ruled in Patrowich v Chemical Bank (63 NY2d 541 [1984]) an individual needs to have the power to carry out personnel decisions in order to be considered an employer under the Human Rights Law. Other than the above-noted defendants, facts have not been pleaded to demonstrate this type of authority, nor have any other facts been pleaded that create an issue of fact as to the remaining defendants’ status as employers. Importantly, no facts have been specifically pleaded with regard to the remaining defendants on any cause of action in the amended complaint. The plaintiffs have not demonstrated a prima facie case against any named defendants other than the above-named four.
*585 Summary judgment is denied on this cause of action as to University of Rochester Strong Memorial Hospital and Dr. Gabel. All causes of action are dismissed as to the remaining defendants.
The second cause of action is based on alleged violations of NY Constitution, article VI, § 7 and Judiciary Law § 140-b. In order for Dr. Samper to be afforded due process protections, she must first demonstrate a deprivation of liberty or property as a result of the defendants’ acts. (Board of Curators, Univ. of Mo. v Horowitz, 435 US 78 [1978].)
Dr. Samper claims a deprivation of her rights in connection with the events leading up to and including the January 25, 1985 meeting, called by Dr. Gabel and the Clinical Competency Committee. As more fully set forth in the statements of facts, Dr. Samper requested an adjournment of the meeting, to have her attorney present. That request was denied. Dr. Samper requested certain documents relating to her files prior to the meeting for the purposes of review; that request was also denied.
The success of this cause of action is determined by the attachment of procedural due process rights to .the allegations concerning the meeting. The facts are clear that the purpose of the meeting was to examine the basis of Dr. Samper’s unsatisfactory review for the preceding six months. The function of the meeting was to provide an explanation of an educational evaluation; it was not in the nature of a disciplinary proceeding.
There is an important distinction between educational and disciplinary reviews. In Matter of Ryan v Hofstra Univ. (67 Misc 2d 651 [Sup Ct, Nassau County 1971]) the court recognized the need for procedural due process protections in connection with disciplinary proceedings. In Ryan, a student was expelled from campus and his family fined after he allegedly threw rocks through a window at the university bookstore. Although the incident allegedly took place in June, the school did not afford the student a hearing until the following October. In Ryan, there were a number of departures from due process, including the absence of a fair hear- ' ing, the failure to give the student the choice provided for in the university’s own rules, the punitive delay and the summary imposition of the most extreme penalty available. The school’s actions were found to have violated the student’s due process rights.
*586 In contrast, in Board of Curators, Univ. of Mo. v Horowitz (435 US 78 [1978], supra), a medical student was dismissed for academic cause after several reviews and after special procedures had been instituted by the university to aid her professional development.
Following a negative report filed after the student completed an additional pediatrics rotation, the evaluation committee recommended that she be dismissed. Ultimately, the student brought a lawsuit charging that the university by its conduct violated her 14th Amendment due process rights. The United States Supreme Court held that "dismissals for academic (as opposed to disciplinary) cause do not necessitate a hearing before the school’s decision making body.” (Supra, at 87.) The court went on to state that assuming the existence of a liberty interest, the school awarded the student at least as much due process as the 14th Amendment required. (Supra.)
It is clear that procedural due process protections are more flexible in the context of academic reviews. In Matter of Sofair v State Univ. of N. Y. Upstate Med. Center Coll, of Medicine (44 NY2d 475 [1978]) the Court of Appeals reversed the Appellate Division of the Fourth Department on facts similar to the instant matter. Ezra Sofair was dismissed by Upstate Medical Center College of Medicine for academic cause. Before the school’s final determination, the plaintiff was afforded a hearing within hours (or minutes) after receiving notice of his dismissal. Sofair claimed a violation of his right to procedural due process based upon thé lack of sufficient notice for the hearing. The court concluded that because the dismissal was predicated on an academic evaluation, it bore " Tittle resemblance to the judicial and administrative factfinding proceedings to which we have traditionally attached a full hearing requirement.’ ” (Supra, at 480, citing Board of Curators, Univ. of Mo. v Horowitz, supra, at 89-90.)
Public policy reasons also play a large part in the court’s reluctance to intervene. In Matter of Olsson v Board of Higher Educ. (49 NY2d 408, 413 *[1980]) the court noted: "When an educational institution issues a diploma to one of its students, it is, in effect, certifying to society that the student possesses all of the knowledge and skills that are required by his chosen discipline * * * [I]t is essential that the decisions surrounding the issuance of these credentials be left to the sound judgment of the professional educators who monitor the progress of their students on a regular basis.”
*587 In Sofair (supra) and Olsson (supra), the Court of Appeals recognized that academic decisions did not easily lend themselves to a fact-finding process as encompassed by normal due process procedures. Academic judgments are subjective — they are made in an education, not adversarial environment. The courts of this State have reserved those judgments to educators, not Judges and juries.
This court need not address the issue of State action. No deprivation of liberty or property that would trigger due process protection has, been demonstrated. Dr. Samper’s second cause of action is dismissed.
[Portions of opinion omitted for purposes of publication.]

. This court, pursuant to a request of the State Reporter, has edited this decision to include only the discussion of the plaintiffs claim dealing with sex discrimination and due process. (22 NYCRR 7300.5, 7300.6.)

. Although "employer and employee” is defined in the Federal statute (42 USC § 2000 [e]), Federal case law examining the functional definition of an employer has followed the same type of analysis as set forth in State Div. of Human Rights v GTE Corp. (109 AD2d 1082). (See generally, Spirides v Reinhardt, 613 F2d 826 [1979]; Doe v St. Joseph’s Hosp., 788 F2d 411 [1986]; Caledron v Martin County, 639 F2d 271 [1981].)