OPINION OF THE COURT
Kenneth R. Fisher, J.
Defendants Calle and Barnett move for summary judgment on plaintiffs State Human Rights Law (SHRL) claim for sexual harassment. They contend that, as employees of defendant Mobil Chemical Company, they are not "employers” within the meaning of Executive Law § 296 (1) (a), as defined in section 292 (5). Defendant Calle was plaintiffs immediate supervisor and is the primary object of her sexual harassment claim. Defendant Barnett was employed in the Employee Relations Department of Mobil’s Label Materials Division, and is not a direct object of her claims of harassment. Plaintiff claims that Barnett became aware of Calle’s harassment and did nothing to remedy it.
After reading the applicable statute, which provides that "employer[s]” are the proper subject of SHRL claims of discrimination in employment under Executive Law § 296 (1) (a) ("unlawful discriminatory practice * * * [flor an employer” *3 to engage in the enumerated acts of discrimination) (emphasis supplied), and that "[t]he term 'employer’ does not include any employer with fewer than four persons in his employ” (Executive Law § 292 [5]), the answer to this question would seem naturally to flow from a plain reading. Neither Calle nor Barnett employed four persons; accordingly, they may not be held liable as "employers” under the statute. Because the Legislature failed expressly to provide for individual employee/ supervisor liability, such failure "may be construed as an indication that its exclusion was intended.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 74; Estate of Cowart v Nicklos Drilling Co., 505 US 469, 475 [1992] ["(i)n a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute’s meaning, in all but the most extraordinary circumstance, is finished”]; Matter of Board of Higher Educ. v Carter, 14 NY2d 138, 147 [1964] [applying the ordinary dictionary definition of the term "employer” under the SHRL].)
But the Court of Appeals opined in Patrowich v Chemical Bank (63 NY2d 541 [1984]) that the statutory definition of an employer "provides no clue to whether individual employees of a corporate employer may be sued under its provisions” (supra, 63 NY2d, at 543), and held "that 'economic reality’ governs who may be sued.” (Supra, 63 NY2d, at 543.) The Court elaborated this "economic reality” test only by reference to (a) whether the individual employee in question is "shown to have any ownership interest or power to do more than carry out personnel decisions made by others” (supra, 63 NY2d, at 543-544), and by reference (b) to the holdings of a number of Federal cases that it approved or disapproved. (Supra, 63 NY2d, at 544 [collecting cases].)
No subsequent explication of this economic reality standard has been attempted by the Court of Appeals, and the available cases do not provide a reliable measure of the ownership / power criterion or the "power to do more than carry out personnel decisions made by others” test. For example, it was not revealed in Patrowich (supra) whether the vice-president sought to be held liable held any stock in Chemical Bank, or whether stock ownership at any identified level might satisfy the generic "economic interest” test or the more particular ownership/power test. Similarly, the Court did not give guidance on what "more” power or authority in the corporate scheme was required to satisfy the control/power test than the *4 simple power to carry out personnel decisions made by others that the court found insufficient to trigger individual liability. Nor did the Court identify how the control or power aspect of its analysis was a more particularized version of the "economic reality” test.
Patrowich (supra) thus may properly be read as providing examples of a threshold below which, in the corporate scheme or hierarchy, an individual employee may not be held liable under the SHRL, but not an articulation of the precise standard above which Special Term must find that a question of fact exists that the individual defendant is liable under the State Human Rights Law. This distinction is not important for Barnett’s motion, because, for the reasons stated below, Patrowich clearly compels a grant of summary judgment in his favor. But it is important for Calle’s motion, because Calle may well have had the power to do something more in the corporate hierarchy than carry out someone else’s personnel decisions.[1]
Turning to the facts, defendant Barnett’s motion for summary judgment, presented by leave of the Appellate Division after Barnett’s deposition, Foley v Mobil Chem. Co. (214 AD2d 1005, 1006 [4th Dept 1995]), is resolved readily under the Patrowich test. Plaintiff alleges only that Barnett was in the Employee Relations Department, that he "was part of the process” of Mobil’s hiring, firing, and evaluation of employees, and that he signed personnel action forms recording personnel actions originating elsewhere. Barnett is entitled to summary judgment because he had no ownership of Mobil or power to do more than process and record Mobil’s personnel decisions made by other employees.
Concerning Calle’s motion, defendants established without contradiction in their motion papers that personnel decisions at Mobil were actually made by two layers of line management personnel before they are carried out by Calle. Interpreting the evidence in plaintiffs favor, as is required on motions for summary judgment, it is fair to conclude that, in Mobil’s scheme, Calle made hiring and firing proposals for approval by others, and that he exercised day-to-day control of plaintiffs work schedule and job functions as her supervisor. Calle conceded in his deposition that he hired and trained most of *5 the people in Mobil’s Label Materials Group, albeit with approval from his in-line supervisor, Jim Lambert, and the Employee Relations Department. Indeed, he hired plaintiff, presumably with those two approvals, and evaluated her performance on a yearly basis. According to Calle, she reported to him. According to plaintiff, Calle "ran the whole marketing operation^] * * * [and] often bragged that he could do what he wanted to do and that he had the power to do so because he had the Employee Relations Department in his back pocket.”
But plaintiff’s effort to avoid summary judgment with such allegations is unavailing, because Patrowich (supra) disapproved of the holding in Koster v Chase Manhattan Bank (554 F Supp 285 [SD NY 1983]), in which virtually identical allegations by the plaintiff in that case, that her supervisor’s recommendations "were usually 'rubber stamped,’ ” were held sufficient to raise an issue of fact precluding summary judgment on the individual liability issue. (Supra, 554 F Supp, at 290.) Indeed, Calle’s alleged power to recommend personnel actions and his day-to-day control over plaintiff as her supervisor mirror the pleadings in Patrowich itself. Accordingly, Calle appears to be entitled to summary judgment notwithstanding plaintiff’s averments of his supposed autonomy.[2]
This conclusion is consistent with an analysis of the generic "economic reality” test embraced by Patrowich (supra), which was drawn largely from a line of Fair Labor Standards Act (FLSA) cases. In Carter v Dutchess Community Coll. (735 F2d 8 [2d Cir 1984]), cited with approval in Patrowich (63 NY2d 541, 544, supra), the court held that "[t]he 'economic reality’ test * * * has been refined and * * * is understood to include in *6 quiries into: 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.’ ” (Carter v Dutchess Community Coll., 735 F2d, at 12, quoting Bonnette v California Health & Welfare Agency, 704 F2d 1465, 1470 [9th Cir 1983].) The multifactor test of State Div. of Human Rights v GTE Corp. (109 AD2d 1082 [4th Dept 1985]) appears to be a similar approach, though not in terms identical. (See also, Samper v University of Rochester Strong Mem. Hosp., 139 Misc 2d 580, 583 [Sup Ct, Monroe County 1987], mod on other grounds and otherwise affd 144 AD2d 940 [4th Dept 1988].)
In Danneskjold v Hausrath (82 F3d 37 [2d Cir 1996]), however, which like Carter (supra) involved a claim by a prison inmate seeking unpaid minimum wages under the FLSA, the court substantially revised its approach to the economic reality test, and rejected the applicability of the four-part test of Carter and Bonnette (supra) to contexts in which it is not apt. Instead, the court employed "an economic reality test at a higher level of generality” than the multifactor test, taking into account the policies underlying the FLSA and whether denying coverage "tended to undermine compliance with the FLSA.” (Supra, 82 F3d, at 42.) Finding that the four-factor test of Carter and Bonnette is not helpful in the prison labor context, because it "is useful largely in cases involving claims of joint employment” (supra, 82 F3d, at 43), the court nevertheless adhered to an economic reality approach, by considering whether the plaintiff was "an employee in any conventional sense.” (Supra, 82 F3d, at 42.) In doing so, the court determined that, in the circumstances of prison labor and in light of the statutory scheme, "[t]he relationship [wa]s not one of employment” (supra, 82 F3d, at 42), and it "discarded] the four-factor Bonnette test as a surrogate for an economic reality test.” (Supra, 82 F3d, at 44; see also, Vanskike v Peters, 974 F2d 806, 809 [7th Cir 1992] ["(t)he Bonnette factors, with their emphasis on control over the terms and structure of the employment relationship, are particularly appropriate where (as in Bonnette itself) it is clear that some entity is an 'employer’ and the question is which one”], cert denied 507 US 928 [1993].) This is persuasive authority discouraging the use of the four-factor test of GTE Corp. and Samper (supra) except in contexts in which it "capturéis] the true nature of the relationship” (Vanskike v Peters, 974 F2d, at 809), and encouraging the use of the *7 "economic reality” test in light of the underlying SHRL scheme, by exploring whether a denial of coverage would tend to undermine compliance with the SHRL.[3]
Concluding that the four-factor test of GTE Corp. and Samper (supra) is inapt to this case leaves for consideration whether a question of fact exists under the generic "economic reality” test. A review of the other cases approved in Patrowich (supra), and an examination whether the SHRL would be undermined by denying coverage, shows that plaintiff has failed to raise such an issue of fact with respect to Calle. Beginning with the cases, in Donovan v Agnew (712 F2d 1509 [1st Cir 1983]), the two individual defendants sought to be held liable were the sole officers and directors of the corporation which wholly owned plaintiff’s nominal employer. Observing that its holding was "narrow”, the court found individual liability under the economic reality test of "corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation’s day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment.” (Supra, 712 F2d, at 1514.) Similarly, in Donovan v Sabine Irrigation Co. (695 F2d 190 [5th Cir 1983], cert denied 463 US 1207 [1983]), the individual sought to be held liable under the economic reality test " 'exercised *8 pervasive control over the business and. financial affairs’ ” of the entity employer. (Supra, 695 F2d, at 195 [personal exercise of " 'financial gymnastics directly affected Sabine’s employees by making it possible for Sabine to meet its payroll and keep its employees supplied with the equipment and materials necessary to perform their jobs’ ”], quoting the District Court’s opinion, 531 F Supp 923, 929.) "[Ujltimate control was vested in * * * [the individual, and] [t]he corporation’s very survival depended upon * * * [his] largesse, with his decision .to terminate all financial aid precipitating its near-demise” and plaintiff’s FLSA claim. (Supra, 695 F2d, at 195.) Neither of these cases even remotely applies to Calle’s relationship to Mobil.
The approach of these Federal cases to the economic reality test bears some resemblance to the reasoning recently employed by the Fourth Department to support its vicarious entity liability finding against a high-level corporate employee who was " 'more than an agent * * * or employee vested with some supervisory or decision-making responsibility.’ ” (Matter of Father Belle Community Ctr. v New York State Div. of Human Rights, 221 AD2d 44, 55 [4th Dept 1996], quoting Loughry v Lincoln First Bank, 67 NY2d 369, 380 [1986].) The import of the FLSA cases approved in Patrowich (supra), when considered with the helpful discussion in Father Belle Community Ctr., is that the supervisor may be held individually liable if the economic reality of the relationship between the supervisor sought to be charged under the SHRL, and the entity employer, is such that it may fairly be said that the supervisor was for all intents and purposes the actual employer.
This conclusion that there is some relationship between the respective determinations of individual and vicarious liability finds support in the recent and overwhelming case law rejecting individual liability in the Title VII, ADA and ADEA context. (Tomka v Seiler Corp., 66 F3d 1295, 1313-1317 [2d Cir 1995]; Williams v Banning, 72 F3d 552, 554, n 2 [7th Cir 1995] [collecting cases].)[4] There are dissenting views, see e.g., Tomka (66 F3d, at 1318-1324 [Parker, J., dissenting]), but the basis of these dissents is Title VII’s inclusion of "agents” of covered entity "employers” in the statutory definition. There is no such statutory interpretation problem under the SHRL, because Executive Law § 292 (5) does not include agents or em *9 ployees in the definition of an "employer,” a fact which undoubtedly motivated the Court in Matter of Father Belle Community Ctr. v New York State Div. of Human Rights (supra) to carefully eschew a common-law agency rationale for vicarious liability under the SHRL.
A holding that Calle is an "employer” within the statute would create the anomaly that a corporate vice-president in charge of plaintiffs division escapes liability under the statute (the situation in Patrowich, supra), but a relatively low-level supervisor, who apparently exercises considerable control over plaintiff’s workplace and conditions of employment in this large corporation, but who has considerably less significance in the over-all corporate structure in any economically realistic sense, may be held individually liable. Compounding the anomaly is the fact that, in the latter case, the company itself may remain immune from liability under vicarious liability principles because it could not, or did not, have actual or constructive knowledge of the allegedly discriminatory conduct. Although Mobil has not itself brought a motion for summary judgment and the record is otherwise undeveloped on the point, this is more than just a possibility in a corporation as large as Mobil. Even those few who would support individual liability in the Title VII context acknowledge "that Title VII liability on the part of employer’s agent must be premised upon a prior finding that the complained-of conduct may properly be imputed to the employer as well.” (Tomka v Seila Corp., 66 F3d, supra, at 1323 [Parker, J., dissenting]; accord, 66 F3d, at 1315 [majority opn].)
Accordingly, a close examination of the statutory scheme of the SHRL shows that the Legislature did not intend, except in the "economic reality” of an individual defendant who should indeed be deemed the actual employer, that the individual be held liable when the entity itself may not be held liable under vicarious liability principles. The "parade of horribles” persuading Federal Circuit Courts that Congress relieved individuals of liability under Title VII even when vicarious liability of the entity is available to the plaintiff, and thus making joint and several liability available to the defendant to ameliorate the individual’s exposure (e.g., Tomka v Seiler Corp., 66 F3d, supra, at 1315-1316), becomes a most compelling rationale for concluding that the Legislature intended to relieve individuals of liability under SHRL when the possibility exists that such liability might be "shared” alone. Such possibility always exists when the economic reality of the individual’s re *10 lationship to the entity employer is insufficient to consider him, in any functional sense, the employer.[5] .
Other aspects of the SHRL statutory scheme suggest that the Legislature did not intend individual liability in the absence of the economic reality that the individual is the true employer. Taking a cue from the Title VII cases, the Legislature’s decision to protect small employers (fewer than four employees under the SHRL) from the costs of defending such suits strongly suggests that the Legislature did not intend to allow civil liability to run against employees who are not in any economic realistic sense "employers” under the Patrowich analysis who presumably would be able to pay. (Tomka v Seiler Corp., 66 F3d, supra, at 1314 ["it. was 'inconceivable’ that a Congress concerned with protecting spaall employers would simultaneously allow civil liability to run against individual employees”].) Although the Title VII cases employ this rationale to relieve all employees from liability, Patrowich (supra) makes clear that this reasoning would only apply to individual employees who, under the economic reality test, may not fairly be viewed as the "employer.” Part of the function of the economic reality test is to weed out and protect those employees of an employer who, in good conscience, should not be forced to bear the brunt of a damages award alone.
This construction of the statute would not undermine compliance with the SHRL because the full panoply of remedies that the statute allows remains available for imposition against the employer, which is in the best position to eradicate the discriminatory practice. (Martin v Easton Publ. Co., 478 F Supp 796, 799 [ED Pa 1979], cited with approval in Patrowich v Chemical Bank, 63 NY2d 541, 544, supra.) As aptly stated in United States Equal Empl. Opportunity Commn. v AIC Sec. Investigations (55 F3d 1276 [7th Cir 1995]), the contrary view that "individual liability is essential to dissuade supervisors and other individuals from violating the law * * * and that *11 through the loophole of no individual liability will pour a flood of unpunished and undeterrable discrimination,” is a "Chicken Little-esque argument,” adequately refuted by the fact that "[t]he employing entity is still liable, and that entity and its managers have the proper incentives to adequately discipline wayward employees, as well as to instruct and train employees to avoid actions that might impose liability.” (Supra, 55 F3d, at 1282; see also, Matter of New York City Tr. Auth. v State Div. of Human Rights, 78 NY2d 207, 217 [1991] ["the relief imposed by the Commissioner need only be reasonably related to the discriminatory conduct”].)
AIDERS AND ABETTORS THEORY
In holding that plaintiff fails to raise a question of fact under the economic reality test embraced in Patrowich (supra), it becomes necessary to consider plaintiff’s invitation to the court to embrace the additional holding of Tomka v Seiler Corp. (66 F3d 1295, 1317, supra), that employee supervisors may be held liable under Executive Law § 296 (6) as aiders and abettors of the discrimination. Although the First Department has embraced such a theory, it has done so without discussion of the New York statutory scheme and whether the Legislature ever intended the aiders and abettors provision to make those primarily and directly perpetrating the harassment within the employment relationship liable as individuals. (Steadman v Sinclair, 223 AD2d 392 [1st Dept 1996]; Peck v Sony Music Corp., 221 AD2d 157 [1st Dept 1995].) A case in the Second Department recently rejected Tomka’s and the First Department’s approach. (Trovato v Air Express Intl., NYLJ, Apr. 17, 1996, at 30, col 4 [Sup Ct, Nassau County].) In codefendant Barnett’s case, the Fourth Department recalled the Patrowich formula without discussion of the issue. (Foley v Mobil Chem. Co., 214 AD2d 1005, supra.) The one treatment of section 296 (6) in the Court of Appeals sheds no light on this question. (Jews for Jesus v Jewish Community Relations Council, 79 NY2d 227, 232-233 [1992].)
Interpreting section 296 (6) in the manner suggested by plaintiff would render the Patrowich "economic reality” inquiry essentially meaningless in most cases. As one court has held, applying section 296 (6) to a person in a "common employment relationship” with the plaintiff would render the Patrowich "economic reality” approach, which as interpreted here has a textual source in the SHRL’s use of the term "employer”, unnecessary. (Falbaum v Pomerantz, 891 F Supp *12 986, 992 [SD NY 1995].) It is a fundamental tenet of the law of statutory construction, recognized in Falbaum (891 F Supp, at 922), that "meaning and effect should be given to all its language, if possible, and words are not to be rejected as superfluous when it is practicable to give to each a distinct and separate meaning.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 231; see, Matter of Bliss v Bliss, 66 NY2d 382, 389 [1985].) The holding of Tomka (supra) and the Federal District Court cases cited in support of its holding essentially ignore, by rendering meaningless in most cases, the legislative choice of the word "employer” in section 296 (1) (a), and the substance of the "economic reality” test giving meaning to that word embraced in Patrowich (supra). Application of that test would be unnecessary if individual employees in any event would be held liable as aiders and abettors. From a careful analysis of the statutory scheme, however, it is clear that the Legislature intended application of the aiders and abettors provision only to "parties outside the employment relationship who may assist in employment discrimination.” (Cohen, Individual Corporate Officer Liability, NYLJ, Aug. 7, 1995, at SI, col 1, S12, col 4, n 44.)
Worse yet, these decisions ignore the common-law definition of an "aider and abettor” as one who without being present aids or assists the principal wrongdoer to commit the allegedly unlawful act. Except in the Penal Law context, in which the distinction between a principal wrongdoer and an aider and abettor was swept away by statute to remove many procedural barriers to criminal conviction of accessories to crime (People v Bliven, 112 NY 79, 82-83 [1889]; LaFave and Scott, Criminal Law § 6.6 [d]-[e], at 572-575 [2d ed 1986]; see also, People v Guidice, 83 NY2d 630, 637 [1994] ["(f)or charging purposes, the distinction between principal and accomplice is academic”] [emphasis supplied]), the concept of an aider and abettor written into the SHRL must retain its common-law characteristics in the absence of statutory definition or other clear expression of contrary legislative intent contained in the "language used in the statute.” (Arbegast v Board of Educ., 65 NY2d 161, 169 [1985].) This rule applies particularly when the asserted change "affects * * * rules of liability.” (Hammelburger v Foursome Inn Corp., 54 NY2d 580, 592 [1981] [adding: "public policy determined by the Legislature is not to be extended by a court by reason of its [i.e., the court’s] notion of what the public policy ought to be”]; see also, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 153, 301.)
*13 It is true that the SHRL "shall be construed, liberally for the accomplishment of the purposes thereof’ (Executive Law § 300) on such issues as whether the SDHR Commissioner’s determination is supported by substantial evidence (300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 183-184 [1978]; City of Schenectady v State Div. of Human Rights, 37 NY2d 421, 428 [1975] ["duty of courts to make sure that the Human Rights Law works and that the intent of the Legislature is not thwarted by a combination of strict construction of the statute and a battle with semantics”]; Matter of Board of Higher Educ. v Carter, 14 NY2d 138, 153 [1964], supra), and whether the remedy chosen by the Commissioner is consistent with the statutory scheme. (New York Inst. of Technology v State Div. of Human Rights, 40 NY2d 316, 324-325 [1976].) But it is a leap beyond the proper role of the courts to use the liberal construction provision alone in a manner producing a result which finds no other textual source in the SHRL, and to ignore language carefully chosen by the Legislature. If the Legislature wished to reach the conduct of individuals in a common employment relationship with the plaintiff, it easily could have so defined the term aiders and abettors as it did under Penal Law § 20.00. Because nothing in the statute other than the liberal construction provision itself supports plaintiffs interpretation of section 296 (6), the court finds that the common-law meaning of the term controls. As well stated in another context: "We do not doubt that the employment discrimination statutes have broad remedial purposes and should be interpreted liberally, but that cannot trump the narrow, focused conclusion we draw from the structure and logic of the statutes. A liberal construction does not mean one that flies in the face of the structure of the statute.” (United States Equal Empl. Opportunity Commn. v AIC Sec. Investigations, 55 F3d, at 1282, supra.)
Accordingly, and because this court is bound to follow the "economic reality” test Patrowich (supra) establishes for inquiries such as these, which is the test the Appellate Division prescribed for application in codefendant Barnett’s case (Foley v Mobil Chem. Co., 214 AD2d 1005, 1006, supra), it is necessary to consider the question under section 296 (6) in light of the legislative history and purpose of the SHRL statutory scheme. For the reasons stated above, the court concludes that the aiders and abettors provision is not available to hold Calle liable.
*14 CONCLUSION
The motions of defendant Barnett and Calle for summary judgment on the SHRL claims are granted.

. The vice-president in Patrowich (supra) presumably had the power to do a lot more than carry out someone else’s personnel decisions. He was, after all, "the manager or supervisor of a corporate division” (supra, 63 NY2d, at 542), and plaintiff’s supervisor. (98 AD2d 318, 325 [1st Dept 1984], affd 63 NY2d 541.)

. To be distinguished are situations in which the employer actually delegates the power to exercise employment decisions to the supervisor. (York v Tennessee Crushed Stone Assn., 684 F2d 360, 362 [6th Cir 1982], cited with approval in Patrowich v Chemical Bank, supra.) There is in this case no evidence of a delegation remotely like those considered in York to trigger individual liability. (Supra, 684 F2d, at 362 [collecting examples in the cited cases].) In any event, the court was careful to point out that such employees could be sued only in their "official capacity.” (Supra.) The Sixth Circuit recently confirmed the observation in Winston v Hardee’s Food Sys. (903 F Supp 1151 [WD Ky 1995]) that York did not decide the individual liability issue on other than an official capacity basis, and that the issue remains open in that jurisdiction under Title VII. (Wilson v Nutt, 1995 WL 638298, 2, n 3 [6th Cir, Oct. 30, 1995].) Other cases accepting official capacity suits against individuals, but not personal capacity suits, include Gary v Long (59 F3d 1391, 1399 [DC Cir 1995], cert denied sub nom. Gary v Washington Metro. Area Tr. Auth., — US —, 116 S Ct 569 [1995]); Grant v Lone Star Co. (21 F3d 649, 652 [5th Cir 1994], cert denied — US —, 115 S Ct 574 [1994]); Harvey v Blake (913 F2d 226, 227-228 [5th Cir 1990]).

. The Carter and Bonnette four-factor test which focuses on control is functionally indistinguishable except in minor particulars from the multifactor test in State Div. of Human Rights v GTE Corp. and Samper (supra). These tests "harke[n] back to the common law distinction between an employer and an independent contractor” and "thus primarily shed light on just one boundary” of the employment relationship. (Vanskike v Peters, 974 F2d, supra, at 810; see also, 52 NY Jur 2d, Employment Relations, § 42, at 59-61 [1986] [the predecessor of which was quoted in State Div. of Human Rights v GTE Corp., 109 AD2d, at 1083]; Matter of Villa Maria Inst. [Ross], 54 NY2d 691, 692-693 [1981] [employers or "independent contractors”], cited in Samper v University of Rochester Strong Mem. Hosp., 139 Misc 2d, supra, at 583; Matter of Pelow v Sork Enters., 39 AD2d 494, 496 [3d Dept 1972], affd 33 NY2d 944 [1974].) These tests have little relevance to the determination whether an employee of an entity, the latter of which is unquestionably an employer, is also an "employer” within the meaning of a statute which defines the term. In Samper, defendants asked the court to declare that the education context was not covered by the statute and its concept of an "employer.” The question of Dr. Gabel’s status as an "employer” under the Patrowich test does not appear to have been a contested issue on appeal in Samper, because the defendants did not file a cross appeal. In GTE Corp., the other case using the four-factor test, the issue was whether GTE Corporation, or a temporary employment agency, was the employer. Accordingly, there is no precedent commanding application of the four-factor test to circumstances such as these.

. Coffin v South Carolina Dept. of Social Servs. (562 F Supp 579, 589-590 [D SC 1983]), cited with approval in Patrowich (supra), would appear to need reexamination in light of these cases.

. Plaintiff contends, and some of the older cases suggest, that the test of individual liability should be limited to whether the supervisor participated in the employment decisions which led to plaintiffs lawsuit. This argument cannot succeed, because a review of the record on appeal in Patrowich (supra) reveals that the corporate vice-president sought to be held individually liable allegedly committed the discriminatory actions. Accepting such an argument would only sanction another way of invoking the agency rationale for determining an employee’s liability as an "employer” under section 296 (1) (a) that the statute does not embrace (unlike Title VII), (see, Executive Law § 292 [5]), and Matter of Father Belle Community Ctr. (supra) has squarely rejected in the vicarious liability context.