941 F.Supp. 452 (1996)
Jeannette C. McNULTY, Plaintiff,
v.
The NEW YORK CITY DEPARTMENT OF FINANCE, the Office of the New York City Sheriff, the Office of the New York City Mayor, the City of New York, the New York City Department of Personnel, Randy Mastro, and Kerry J. Katsorhis, Defendants.
No. 96 Civ. 2160 (LBS).
United States District Court, S.D. New York.
October 24, 1996.
*453 Menken & Dean, New York City (Bruce Menken, of counsel), for Plaintiff.
Paul A. Crotty, Corporation Counsel for the City of New York, New York City (Katherine Winningham, of counsel), for Defendants.

OPINION
SAND, District Judge.
Jeanette C. McNulty brings this action against defendants the New York City Department of Finance, the Office of the New York City Sheriff, the Office of the New York City Mayor, the City of New York, the New York City Department of Personnel, Randy Mastro, and Kerry J. Katsorhis. She claims that the defendants discriminated against her on the basis of her age and sex in their decisions to terminate her current and impede her future employment with the City. Defendants move to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim, pursuant to Fed. R.Civ.P. 12(b)(1) and (6). For the reasons set forth below, the motion is denied in part and granted in part.

I. BACKGROUND

A.
In addressing a motion to dismiss for failure to state a claim under Rule 12(b)(6), we *454 are required "to construe any well-pleaded factual allegations in the complaint in favor of the plaintiff[] and [to] dismiss the complaint only if `it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Gagliardi v. Village of Pawling, 18 F.3d 188, 191 (2d Cir.1994) (citations omitted). Our function is not to weigh the evidence that might be presented at trial, but merely to determine whether the complaint itself is legally sufficient, Festa v. Local 3 Int'l Brotherhood of Electrical Workers, 905 F.2d 35, 37 (2d Cir.1990). "[C]onsideration is limited to the factual allegations in plaintiff's ... complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir.1993).
The facts taken as true on this motion are drawn from plaintiff's First Amended Complaint.

B.
Plaintiff McNulty is a 60 year-old woman. She worked in various capacities for the City of New York from late 1978 until her employment was terminated on February 15, 1995, First Amended Compl. ¶ 16. At the time she lost her job, she was working in the Office of the City Sheriff. She had been employed there since July 1990; first as Executive Assistant to the Sheriff and then as Director of Personnel for the Office of the City Sheriff, a position to which she was promoted in November 1993, First Amended Compl. ¶¶ 17-19. In her capacity as Director of Personnel, the plaintiff "never attended or was invited to attend weekly Sheriff's Office executive level policy making meetings." Id. at ¶ 18.
On or about February 10, 1995, defendant Mastro or an employee of the Mayor's Office instructed then-Sheriff Katsorhis to select seven employees for termination from his office, id. at ¶ 20. Katsorhis chose plaintiff and six other employees; Mastro reviewed and approved his decision, id. Plaintiff was told of her termination by Katsorhis on February 15. He confirmed it in a memo later that day. The memo indicated that she was terminated due to "budgetary constraints", id. at ¶ 22.
The City has since rehired the other six employees, id. at ¶ 24, having immediately reinstated four (within the Sheriff's Office) and the other two over time (one in the Sheriff's Office and the other in an undisclosed agency), id. Five of the six were, like plaintiff, provisional employees under the New York Civil Service Law, id. at ¶ 20, and thus not entitled to reinstatement. McNulty was the oldest of the seven terminated, id. at ¶ 24.
When she learned of the reinstatement of four of her former colleagues, McNulty prevailed upon Katsorhis to rehire her. In the process, she reminded him of her age, id. at ¶ 25. He refused to reconsider his decision, id.
Plaintiff made one final attempt to return to the Sheriff's Office, writing a letter to the Mayor of New York City in a letter dated February 19, 1995, id. at ¶ 26. This letter was copied to Mastro, id. Plaintiff never received a response, id.
In April 1995, the Sheriff's Office hired a new Director of Personnel, Ellen Poliski, a 47 year-old woman; Poliski was hired with the same job description and salary, as McNulty, id. at ¶ 23; Reply at 20. This hiring was executed by Katsorhis, Mastro and the Office of the Mayor without following the standard job listing procedures, First Amended Compl. ¶ 23.
Also in April 1995, McNulty applied for a job with the Conflicts of Interest Board ("COIB") as the Director of Administrative Services and was given a tentative start date of mid-June 1995, id. at ¶ 27. On May 26, 1995, she received a phone call from the Deputy Director of the COIB, informing her that
her hiring at COIB would not be approved by the Office of the Mayor.... [That] she was an "unacceptable candidate" because she was terminated "for cause" and therefore could not and would not be rehired by *455 COIB or any other New York City agency.... [And] that this was Mayor's Office policy.
Id. at ¶ 28. Plaintiff since learned that Ute O'Malley, a woman "substantially younger" than her, had been hired for that position, id. at ¶ 29.
Plaintiff also took the New York City civil service examination in March 1995. She was one of many to achieve the highest possible grade, id. at ¶ 31. Despite this, she did not receive job inquiries from any city agencies, id.
Concluding that she was being barred from employment by the defendants, plaintiff initiated this lawsuit after complying with the dictates of Title VII and the ADEA by filing charges of discrimination against some of the defendants before the EEOC on August 4, 1995, id. at ¶ 4. She received a "right to sue letter" on January 18, 1996 and filed this action within 90 days, id. at ¶ 5.

C.
McNulty has brought claims under federal, state, and municipal law. First, she claims that all the entity defendants (but not Mastro or Katsorhis) discriminated against her, on the basis of her age, in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 626 et seq. (the "ADEA"). Second, she claims that those same entity defendants discriminated against her on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Third, McNulty claims that all the defendants, including Mastro and Katsorhis as individuals, discriminated against her on the basis of her age and sex in violation of the New York State Human Rights Law, N.Y.Exec.Law § 290 et seq. (the "HRL"). And fourth, she makes the same claim cast as a violation of the New York City Human Rights Law, N.Y.C.Admin.Code § 8-101 et seq. (the "City Law").
Defendants ask the Court to dismiss all of these claims under either Fed.R.Civ.P. 12(b)(1) or 12(b)(6). Defendants advance a battery of arguments in support of their motion: (a) that the plaintiff has not adequately pleaded a prima facie case of age or sex discrimination; (b) that plaintiff is not protected by either Title VII or the ADEA because she held a confidential policy-making position; (c) that plaintiff fails to state a claim against Mastro and Katsorhis under the HRL; (d) that the individual city agencies are not suable entities and must be dismissed; and (e) that plaintiff's claim under the City Law is barred because she failed to file a copy of her complaint with the Human Rights Commission (the "HRC") prior to initiating this action (a condition precedent to legal action). These are taken up seriatim.

II. DISCUSSION

A.
Defendants urge the Court to dismiss the entire case because McNulty has failed to state a prima facie claim of either age or sex discrimination. They properly outline the process of proving an employment discrimination claim, but imprecisely define that process as pleading a prima facie claim.
Courts have used a three step analysis to evaluate employment discrimination claims. First, plaintiff must claim a prima facie case of discrimination, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973):
To allege a prima facie case of discrimination in an unlawful discharge case, as originally required in McDonnell Douglas, plaintiff must show that [s]he: "(1) was a member of a protected class; (2) was qualified for the position; (3) was discharged; and (4) the discharge occurred in circumstances giving rise to an inference of discrimination."
Rosen v. Thornburgh, 928 F.2d 528, 532 (2d Cir.1991). The defendant must then produce evidence of a lawful reason for the employment action, see Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253-54, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981). Finally, the plaintiff must prove that those proffered reasons are not pretextual, but are in fact masking a discriminatory intent, see St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510-15, 113 S.Ct. 2742, 2748-52, 125 L.Ed.2d 407 (1993); Burdine, 450 U.S. at *456 256, 101 S.Ct. at 1095. This analysis, initially applied in the Title VII context, is also used to evaluate claims in ADEA and HRL cases, Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203-04 (2d Cir.1995) (ADEA); Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1180 (2d Cir.), cert. denied, 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992) (HRL).
Although the prima facie case in the employment discrimination context is merely the first step in the McDonnell Douglas test, a plaintiff is not required to do more to defeat a 12(b)(6) motion, see Dugan v. Martin Marietta Aerospace, 760 F.2d 397, 398-99 (2d Cir.1985); Abbasi v. Herzfeld & Rubin, P.C., 863 F.Supp. 144, 146 (S.D.N.Y.1994); Dirschel v. Speck, No. 94 Civ. 0502 (LMM), 1994 WL 330262, at *7 (S.D.N.Y. July 8, 1994). Cf. Brass, 987 F.2d at 150. Defendants' argument that plaintiff has failed to demonstrate pretext or intentional discrimination on their part may have merit but is of no consequence to this motion. This flows ineluctably from the difference between a motion to dismiss and a motion for summary judgment; as we are not to consider whether the defendants' contentions prevail over those of the plaintiff, we cannot evaluate their reasons for firing and then not rehiring McNulty. Nor must we weigh the strength of the allegations of pretext made by McNulty.[1]
Taking plaintiff's allegations in her first amended complaint as true, she is a member of a protected class by dint of both her age and sex, First Amended Compl. ¶ 7. She was terminated from her employment with the Office of the Sheriff, id. at ¶ 22, and denied employment by the COIB, id. at ¶ 28. Finally, she was qualified to do, and was performing well in, the job from which she was terminated, id. at ¶ 19, and it can be reasonably inferred from the fact that she was given a tentative start date at the COIB that she was qualified for that position, id. at ¶ 27. McNulty's prima facie case thus turns on whether or not the circumstances surrounding the adverse employment actions McNulty complains of give rise to an inference of discrimination. "In order to survive a Rule 12(b)(6) motion to dismiss in an employment discrimination case, `the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of ... discriminatory intent.'" Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir.1994).
McNulty challenges three separate employment decisions by defendants. These are (1) the decision to terminate her and six colleagues from the Sheriff's Office, the rehiring by the City of those six, and the hiring of a 47 year-old woman to replace her, First Amended Compl. ¶¶ 20-25; (2) the rejection of her application to the COIB due to the interference of the Mayor's Office, and the hiring of a much younger woman to fill that position, id. ¶¶ 27-29; and (3) the continued refusal of any City agency to hire her despite her qualifications and in contrast to the hiring of at least one male former Sheriff's Office employee, terminated at the same time and purportedly for the same reasons as plaintiff, id. at ¶¶ 30-31.

1.
McNulty claims she was discriminated against because of her age. Defendants seek dismissal of this claim on the ground that she fails to make out a prima facie case of age discrimination; in particular, they point out that she was replaced by Poliski, a 47 year-old woman also in the protected class (by virtue of her age), Defs.' Mem. in Supp. at 28-29; Reply at 20.
Defendants' argument turns on an interpretation of the Supreme Court's recent decision in O'Connor v. Consolidated Coin Caterers *457 Corp., ___ U.S. ___, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996), in which the Court stated "The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age." Id. at ___, 116 S.Ct. at 1310. Defendants conclude that McNulty, because she was only twelve years older than Poliski, did not "lose out" because of her age, Defs.' Mem. in Supp. at 29; Reply at 21. They misread O'Connor, however, in their continued emphasis on Poliski's undisputed membership in the protected class, and they misapply it in characterizing Poliski as "insignificantly younger" than McNulty, Reply at 21.
Taking as true that Ute O'Malley, the woman hired by the COIB instead of McNulty, was "substantially younger" than the plaintiff, and drawing an inference of age discrimination from Poliski's hiring, we must conclude that plaintiff has adequately pleaded a case of age discrimination.[2]
Defendants' motion to dismiss McNulty's age discrimination claims for failure to state a claim is DENIED, without prejudice to renewal upon completion of discovery.

2.
McNulty also claims she was discriminated against because of her sex. Defendants challenge the validity of that claim, noting that she was in one instance replaced by, and in another instance passed over in favor of, another woman, Defs.Mem. in Supp. at 26-28; Reply at 17. However, plaintiff also claims that male employees similarly situated were rehired, both by the Sheriff's Office and by other city agencies, First Amended Compl. ¶¶ 20, 24, 30-31. These allegations are sufficient to give rise to an inference of sex discrimination, see O'Malley v. AIDS Institute, No. 95 Civ. 5561 (PKL), 1996 WL 447748, at *2 (S.D.N.Y. Aug. 7, 1996) (male plaintiff pleaded prima facie case of sex discrimination, despite fact that employer continued to hire men and women, because plaintiff was fired while three women, similarly situated, were retained); Davis v. N.Y.C. Health & Hosp. Corp., 640 F.Supp. 155, 159 (E.D.N.Y.1986) (plaintiff, a black man, failed to plead prima facie Title VII case because he was replaced by another black man yet could have pleaded prima facie case had he produced evidence that he was treated worse than similarly situated white employees); see also Int'l Brotherhood of Teamsters v. U.S., 431 U.S. 324, 335, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977) ("[P]roof of discriminating motive is crucial, although it can in some situations be inferred from the mere fact of differences in treatment.").
The defendants' motion to dismiss McNulty's claims of sex discrimination for failure to state a prima facie claim is DENIED, without prejudice to renewal upon completion of discovery.

B.
Defendants move the Court to dismiss McNulty's Title VII and ADEA claims on the ground that the plaintiff is excluded from the protections of both statutes because of the nature of her job as Director of Personnel. They point to sections in each statute exempting government employees that hold confidential, policy-making jobs, Defs.' Mem. in Supp. at 22, citing 29 U.S.C. § 630(f) (Title VII); 42 U.S.C. § 2000e(f) (ADEA); Gregory v. Ashcroft, 501 U.S. 452, 467, 111 S.Ct. 2395, 2404, 115 L.Ed.2d 410 (1991) (holding that state judges, appointed by the Governor, are not protected by the ADEA because they hold positions at a "policymaking level"). Persons exempt from the protections of Title VII and the ADEA are protected under the Civil Rights Act of 1991, 2 U.S.C. § 1201 et seq. (the "1991 Act"), which requires a complainant to await a determination by the Equal Employment Opportunity Commission (the "EEOC") prior to initiating legal action, which McNulty has not done, and denies them de novo review on appeal to the federal district court, 2 U.S.C. § 1220(c)(d). Defendants urge us to dismiss plaintiff's federal claims for lack of subject matter jurisdiction, *458 under Fed.R.Civ.P. 12(b)(1), as she has failed to comply with the 1991 Act and, due to the nature of her job, is not entitled to protection under Title VII or the ADEA.
Title VII and the ADEA both exclude, from the definition of employees protected by their respective provisions,
any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or any appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.
29 U.S.C. § 630(f); 42 U.S.C. § 2000e(f). The question presented is whether, based on the first amended complaint, McNulty's job falls into one or more of the exempt categories.
The standard for dismissal of a complaint for failure to state a claim, as articulated above, is an exacting one. We must read the facts of the complaint as true, and draw reasonable inferences in favor of the nonmoving party, see Brass, 987 F.2d at 150. These constraints require us to accept as dispositive at this stage in the proceedings plaintiff's statement that, "in her position as Director of Personnel, [she] never attended or was invited to attend weekly Sheriff's Office executive level policy making meetings." First Amended Compl. ¶ 18. Coupled with plaintiff's further description of her responsibilities, each of which better fits the role of one who implements rather than makes policy, we must conclude that plaintiff did not hold a confidential policy-making position, and that therefore she is protected under both Title VII and the ADEA.
The defendants' motion to dismiss plaintiff's claims under Title VII and the ADEA for lack of subject matter jurisdiction is DENIED, without prejudice to renewal following completion of discovery.

C.
Defendants next seek to dismiss the claims against Mastro and Katsorhis, as individuals, under the New York State Human Rights Law (the "HRL"). They contend first that the HRL, like Title VII and the ADEA, does not provide for individual liability, Defs.' Mem. in Supp. at 14; Reply at 7. In the alternative, defendants argue that even were the HRL to countenance claims of individual liability, the standard for proving individual liability is (a) high and (b) unmet by the plaintiff, Defs.' Mem. in Supp. at 15; Reply at 7-10.

1.
Defendants' first contention is at odds with case law in the Second Circuit. Courts in this circuit have "treat[ed] the standards of [the HRL] and Title VII as identical", Defs.' Mem. in Supp. at 14, citing Tomka v. Seiler Corp., 66 F.3d 1295, 1304 n. 4 (2d Cir.1995); Song v. Ives Laboratories, Inc., 957 F.2d 1041, 1046 (2d Cir.1992). However, this conclusion is limited to establishing whether there has been discrimination, not who is liable for having discriminated, see Tomka, 66 F.3d at 1304 n. 4; Song, 957 F.2d at 1045-46. Both federal and New York state courts have also acknowledged that individual liability for that conduct can be established under state law, see Tomka, 66 F.3d at 1317; Johnson v. A.P. Products, 934 F.Supp. 625, 629-30 (S.D.N.Y.1996); Rophaiel v. Alken Murray Corp., No. 94 Civ. 9064 (CSH), 1996 WL 221567, at *2-*3 (S.D.N.Y. May 2, 1996); Linville v. O & K Trojan, Inc., No. 91-CV-284S, 1994 WL 117363, *20-*21 (W.D.N.Y. Mar. 31, 1994); Wanamaker v. Columbian Rope Co., 740 F.Supp. 127, 135-36 (N.D.N.Y. 1990); Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542, 473 N.E.2d 11, 12, 483 N.Y.S.2d 659, 660 (1984).

2.
Defendants' second argument  that plaintiff has failed to allege facts sufficient to give rise to individual liability  is somewhat stronger.
Courts have recognized two theories of individual liability under the HRL. The first relies on a broad definition of the word "employer" as used in the statute. The HRL provides that: "It shall be an unlawful discriminatory practice ... for an employer ... because of the age [or] sex ... of any individual, to ... refuse to hire or employ or to *459 bar or to discharge from employment such individual", N.Y.Exec.Law. § 296(1)(a). The HRL does not define "employer," see Patrowich, 63 N.Y.2d at 543, 473 N.E.2d at 12, 483 N.Y.S.2d at 660 ("The Human Rights Law ... provides no clue to whether individual employees of a corporate employer may be sued under its provisions."), leaving courts to determine whether "employer" can refer to individuals. The leading interpretation has been provided by the New York Court of Appeals, which narrowed the class of individuals who could be considered liable as "employers" to exclude those "not shown to have any ownership interest or any power to do more than carry out the personnel decisions made by others," id.[3]
The second theory of individual liability under the HRL is derived from § 296(6), which reads "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." The Second Circuit has held that individuals may be liable for aiding and abetting discriminatory conduct prohibited by the HRL, if such individuals "actively participate[] in the conduct giving rise to a discrimination claim", see Tomka, 66 F.3d at 1317.
McNulty's claim raises a somewhat unique issue  whether the standards of the aiding and abetting cases must be read into the general theory of individual liability articulated in Patrowich and its progeny. McNulty has alleged that both Mastro and Katsorhis were possessed of the power to do more than carry out personnel decisions made by others, see First Amended Compl. ¶ 13 (alleging that Mastro "has the authority to hire, fire and rehire employees of the City of New York"); id. at ¶ 14 (alleging that Katsorhis's duties included "the hiring, firing and rehiring of employees of defendant Office of New York City Sheriff"). It is less clear that she has alleged active participation in the conduct giving rise to a discrimination claim.
Defendants suggest that plaintiff has failed to allege the necessary level of participation. They rely on cases that define "active participation" for the purposes of establishing individual liability under the HRL. However, many of these cases arise out of claims of hostile workplace and/or quid pro quo sexual harassment rather than wrongful discharge, see, e.g., Tomka, 66 F.3d at 1295; Storr v. Anderson School, 919 F.Supp. 144 (S.D.N.Y. 1996); McIlwain v. Korbean Int'l Inv. Corp., 896 F.Supp. 1373 (S.D.N.Y.1995); Bridges v. Eastman Kodak Co., 822 F.Supp. 1020 (S.D.N.Y.1993); Fruchter, 1995 WL 274457. In the above-cited cases, the participation of individual defendants was not in doubt  they made comments and/or committed acts that evinced discriminatory intent, see Tomka, 66 F.3d at 1317 ("[Plaintiff] has alleged that each of the individual defendants assaulted her and thereby created a hostile working environment"); Storr, 919 F.Supp. at 149 ("[P]laintiff has alleged that [defendant] created a hostile work environment by making sexually lewd remarks and derogatory comments about plaintiff's age while in her presence."); McIlwain, 896 F.Supp. at 1383 (co-worker was alleged to have "made repeated unwelcome sexual comments to [plaintiff]"); Bridges, 822 F.Supp. at 1027-29 (defendant was "`almost daily abusive, used foul and offensive language, treated [plaintiff] and other women in a violent manner'") (quoting complaint).
Wrongful discharge cases involve more subtle evidence of discriminatory intent. As the Second Circuit has noted,
[E]mployment discrimination is often accomplished by discreet manipulations and hidden under a veil of self-declared innocence. An employer who discriminates is unlikely to leave a `smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent. A victim of discrimination is therefore seldom able to prove his or her claim by direct evidence and is usually constrained to rely *460 on the cumulative weight of circumstantial evidence.
Rosen, 928 F.2d at 533. The distinction between sexual harassment and wrongful discharge cases[4] is borne out by the wrongful discharge cases cited by defendant, each of which turns on the decisionmaking power of the defendant, see, e.g., Falbaum v. Pomerantz, 891 F.Supp. 986, 991-92 (S.D.N.Y.1995) (individual claims dismissed because plaintiffs had not alleged ownership or control, per Patrowich, and "aiding and abetting" could not be read to circumvent its dictates); Wanamaker, 740 F.Supp. at 136 (dismissing HRL claim against one individual defendant because that individual "did not [take] part in the decision to terminate plaintiff"); Monsanto v. Electronic Data Sys. Corp., 141 A.D.2d 514, 515, 529 N.Y.S.2d 512, 514 (App. Div.1988) ("[A] corporate employee is not individually subject to discrimination suits under the [HRL] `if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others.'") (quoting Patrowich); Petri v. Bank of N.Y., 153 Misc.2d 426, 432 n. 3, 582 N.Y.S.2d 608, 612 n. 3 (Sup.Ct.1992) ("[T]he liability of the [individual] defendants depends on their power over personnel decisions.").
In the one case cited by defendants that involves wrongful discharge and dismisses a claim against an individual for failure to allege specific, active participation in discrimination, claims against Rupert Murdoch, the owner of the New York Post, were dismissed because plaintiffs had "merely named Murdoch as a defendant, identified him in the Complaint and then failed to allege any facts that would give rise to individual HRL liability." Leykis v. NYP Holdings, Inc., 899 F.Supp. 986, 993 (E.D.N.Y.1995). The court went on to suggest that had plaintiffs "alleged specific facts implicating Murdoch in the allegedly discriminatory policy, or perhaps, ... alleged facts regarding Murdoch's participation in the actual hiring and firing of plaintiffs" they would have stated a claim for individual liability, id. at 994.
Applying the standard proposed in Leykis, McNulty has pleaded facts sufficient to lead to an inference of individual liability under the HRL on the part of Mastro and Katsorhis. She alleges that Mastro gave the initial directive to terminate seven employees, First Amended Compl. ¶ 20, that he approved the list of employees Katsorhis presented to him, id., that he (directly or through his agents) was involved in the decision to rehire at least four of the other six employees, id. at ¶ 24, that he was involved in the hiring of Poliski, id. at 23, and that his office was responsible for McNulty being denied the COIB job, id. at 28. Accepting these allegations as true, and drawing all reasonable inferences in favor of the plaintiff, we conclude that Mastro had the power to do more than carry out the personnel decisions of others and that he actively participated in the conduct giving rise to a claim of discrimination.
Similarly, plaintiff has alleged facts sufficient to establish Katsorhis's individual liability under the HRL. She claims that he selected her name as one of the seven to be terminated, id. at 20, that she made him aware of her age in the process of seeking reinstatement and that he refused her request for reinstatement, id. at 25, that he played a role in the rehiring of as many as five of the six other employees terminated from the Sheriff's Office,[5] and that he offered plaintiff what may have been a pretextual reason for her termination (i.e., "budgetary constraints"), id. at 22.
The preceding conclusions notwithstanding, plaintiff must still prove at trial that these acts of which she complains were in fact motivated by age and/or sex discrimination. That she was terminated and then could not secure other employment with the *461 City of New York, even if attributable entirely to the acts of the individual defendants, does not suffice to prove them liable for violations of the HRL absent that further showing.
For the reasons set forth above, the defendants' motion to dismiss the individual claims against Mastro and Katsorhis under the New York State Human Rights Law is DENIED, without prejudice to renewal following completion of discovery.

D.
Defendants seek to dismiss the Office of Sheriff, the Office of the Mayor, the Department of Finance, and the Department of Personnel on the ground that none are suable entities, see Defs.' Mem. of Law in Supp. at 19-21. Plaintiff conceded as much at oral argument and agreed to the dismissal of the individual city agencies, Tr. at 10-11.
The defendants' motion to dismiss plaintiff's claims against the Office of the Sheriff, the Office of the Mayor, the Department of Finance, and the Department of Personnel under Title VII, the ADEA, the HRL, and the New York City Administrative Code is GRANTED.

E.
Plaintiff claims that under the City Law Mastro, Katsorhis, New York City and the Agencies are liable for age and sex discrimination, First Amended Compl. ¶¶ 59-88. Defendants ask the Court to dismiss these claims, not on the merits but because plaintiff failed to file a copy of her complaint with the HRC prior to filing the complaint with this Court, Defs.' Mem. in Supp. at 34; Reply at 26-27. Defendants argue that the filing requirement establishes a condition precedent that, absent compliance, sets up a bar to legal action, Defs.' Mem. in Supp. at 34; Reply at 26-27. In support of this contention, defendants quote the plain language of the N.Y.C. Administrative Code,[6] Defs.' Mem. in Supp. at 34, and cite to several cases in this Circuit dismissing claims for failure to fulfill the filing requirement, Reply at 27.
Since this motion has been briefed, the balance of authority in the Southern District has shifted, with a majority of courts now favoring a more permissive reading of the statute, following the recent New York State Court of Appeals decision in Bernstein v. 1995 Assocs., 217 A.D.2d 512, 515-16, 630 N.Y.S.2d 68, 71-72 (App.Div. 1st Dept.1995) (denying motion to dismiss City Law claim for failure to file until after commencing action; noting that City Law made no provision for investigation of complaint by HRC and construing filing requirement as solely for notice purposes). See, e.g., Abdullajeva v. Club Quarters, Inc., No. 96 Civ. 0383 (LMM), 1996 WL 497029, at *6 (S.D.N.Y. Sept. 3, 1996) (noting that "[c]ases from the Southern District of New York cited by Defendants [interpreting filing requirement as a condition precedent] all pre-date Bernstein. The Court defers to a New York state court's interpretation of New York law and finds that Plaintiff's claims should not be dismissed for failure to serve the relevant parties prior to the commencement of their suit."); McIlwain, 896 F.Supp. at 1383-84 (same).[7] Contrary to defendants' assertion that these decisions fail to consider the "plain language" of the Admin.Code, see Reply at 26, both the McIlwain and Bernstein courts engaged in a careful reading of the language and the City Law more generally, see, e.g., McIlwain, 896 F.Supp. at 1384 n. 10; Bernstein, 217 A.D.2d at 515-16, 630 N.Y.S.2d at 71-72.
As the court in McIlwain noted, "[t]o dismiss [plaintiff's] city law claim and have her refile it the following day would be to exalt form over substance." 896 F.Supp. at 1384. The same holds true in this case. McNulty *462 filed copies of her original complaint with the Corporation Counsel and the HRC subsequent to commencing this action, Pl.'s Mem. in Opp'n at 31 & Exh. I. Furthermore, she did file copies of her first amended complaint with both entities prior to service on this Court, id. Both the HRC and the Corporation Counsel are now aware of this litigation, thus meeting the requirements of the law as those have been interpreted by McIlwain and Bernstein. To require plaintiff to dismiss her City Law claim only to renew it after complying with the technical filing rules of the Administrative Code would be wasteful.
The defendants' motion to dismiss plaintiff's claims under the New York City Human Rights Law is DENIED.

III.
For the reasons set forth above, the defendants' motions are disposed of as follows: (a) the motion to dismiss for failure to state a claim because plaintiff did not plead a prima facie case of age or sex discrimination is denied without prejudice to renewal; (b) the motion to dismiss the Title VII and ADEA claims for lack of subject matter jurisdiction because plaintiff is not covered by either statute is denied without prejudice to renewal; (c) the motion to dismiss the claims against Mastro and Katsorhis as individuals liable under the New York State Human Rights Law is denied without prejudice to renewal; (d) the motion to dismiss the claims against the New York City Department of Finance, the Office of the New York City Sheriff, the Office of the New York City Mayor, and the New York City Department of Personnel is granted without opposition; and (e) the motion to dismiss the claims brought under the New York City Human Rights Law is denied.
It is
SO ORDERED.
NOTES
[1] All of the cases but one cited by defendants in their argument that plaintiff has failed to plead a prima facie case involve either motions for summary judgment or trials. (The lone exception is Abbasi, in which a 12(b)(6) motion was granted in a Title VII action, in the absence of any factual allegations giving rise to the inference of discrimination, 863 F.Supp. at 147.) As such, they are beside the point, to the extent that they engage in a full-blown McDonnell Douglas three step analysis. Defendants in this case must demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Abbasi, 863 F.Supp. at 146 (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)). This is a higher threshold than that cleared by moving parties in the summary judgment cases.
[2] That the other employees rehired by the Sheriff's Office were all younger than McNulty further reinforces her claim of age discrimination, First Amended Compl. ¶ 24, see Cronin, 46 F.3d at 204 ("A finder of fact is permitted to draw an inference of age discrimination from evidence that, in implementing a reorganization or reduction [in force], the employer has located new positions for younger, but not older, employees.").
[3] Patrowich has been narrowed to limit only individual liability under § 296(1)(a) of the HRL, derived from a broad interpretation of the word "employer," and not to establish ownership or power over personnel decisions as preconditions to all claims of individual liability, see McIlwain v. Korbean Int'l Investment Corp., 896 F.Supp. 1373, 1382 (S.D.N.Y.1995); Fruchter v. Sossei, No. 94 Civ. 8586 (LBS), 1995 WL 274457, at *5 (S.D.N.Y. May 10, 1995).
[4] This distinction is a difference in degree rather than in kind, but for the purposes of the Court's analysis, harassment and discharge cases are considered as separate categories.
[5] This inference is drawn from plaintiff's contention that Katsorhis's duties "included ... the hiring, firing and rehiring of employees of the defendant Office of the New York City Sheriff", First Amended Compl. ¶ 14, and from her allegation that four of the six terminations were rescinded and one of the six was subsequently rehired by the Sheriff's Office, id. at ¶ 24.
[6] The Admin.Code reads, in pertinent part, "Prior to commencing a civil action pursuant to subdivision a. of this section, the plaintiff shall serve a copy of the complaint upon the city commission on human rights and the corporation counsel." N.Y.C.Admin.Code § 8-502(c).
[7] One decision since Bernstein has dismissed a claim under the City Law for failure to file copies of the complaint prior to commencement of the action. That case is anomalous; in justifying their failure to file, plaintiffs misconstrued the Admin.Code as requiring a choice between proceeding before the HRC or in federal court, see Cheung v. Merrill Lynch, Pierce, Fenner & Smith, 913 F.Supp. 248, 253 (S.D.N.Y.1996).